PEMBERTON, Respondent, v. FRITTS, et al, Appellants.

(228 N. W. 409.)

(File No. 6358. Opinion filed January 7, 1930.)

*McNulty, Williamson & Smith,* of Aberdeen, for Appellants.
*J. M. Berry,* of Ipswich, for Respondents.

BROWN, J. Plaintiff and her husband, Frank Pemberton, farmers living 3½ miles north of Ipswich, when returning home from Aberdeen between 8 and 9 o'clock on the night of January 4, 1926, in a Chevrolet car driven by the husband, collided with a car driven by defendant Fritts, and from a judgment and an order denying a new trial in an action for injuries alleged to have been sustained by plaintiff in the collision, defendants appeal.

The collision occurred on the Yellowstone Trail, a graveled state highway, at a point about 13 miles west of Aberdeen and a little more than a mile north of Mina, where the road turns south for a mile. Plaintiff and her husband say that when they came up out of a hollow where Snake creek crosses the highway, about 40 rods east of where the accident happened, they saw the light of Fritts' car just as it made the turn a mile to the south; that after watching it for a time they saw that it was traveling fast, about 45 miles an hour in their estimation, and thinking they might meet at the turn, they slowed down to between 10 and 15 miles an hour and kept as close to the north side of the road as they could do with safety. According to Fritts' testimony, the cars collided about 25 yards east of the turn, and testimony on behalf of plaintiff shows that at this point, and for some distance east, the north wheel of the Chevrolet was within 18 inches of the north edge of the grade, which was about 4½ feet high with a slope of about 25 degrees to the ditch on the north side of the road. Testimony on behalf of plaintiff also showed that Fritts' car, which was a Studebaker Six coupe, came around the corner at a rapid rate, one witness saying that he traced the track of its north wheel from the place of collision back around the bend; that this track was within from 3 to 4 feet of the north edge of the grade and was from 6 to 8 inches wide where the loose gravel was swept off as it came around the turn; and that the Studebaker appeared to have rounded the bend about 3 or 4 feet north of the center of the road. The Chevrolet was thrown across the ditch, the hind wheels on the sod beyond and the front wheels against the cut bank, estimated to be from 8 to 12 inches high, the left front tire split open. The bumper was torn loose, the left fender crushed back on the frame, and the left light out after the collision. The car was almost at right angles to the road, facing very slightly southeast. The coupe remained on the grade, which was 24 feet wide, the front of the

coupe being within 3 or 4 feet of the north edge of the grade and the back slewed around toward the south. Both of its front springs were broken, the front axle was broken, and the engine had dropped to the ground; the left front fender and hood were bent, the left light was broken, the cluth and starter were broken, and the cross-arm between both lights to the fenders was broken, one disk wheel bent, and one tire cut up. An effort to move the coupe so as to allow traffic to pass freely on the south side of it was unsuccessful on account of the engine having dropped to the ground, so the rear end of it was slewed further around to the east so as to permit traffic to pass on the south half of the grade.

Fritts worked for the Western Grocer Company as a salesman on commission, taking orders and collecting from retail merchants in territory west and north from Aberdeen. On the day the collision occurred be left Strasburg, N. D., and worked the towns of Pollock, Herreid, Mound City, Selby, Bowdle, and Gretna in the course of his employment, and was on his way home to Aberdeen when the collision occured.

Fritts and W. C. Jepson, a traveling man who was riding with him, testified that on the mile to the corner their speed was 35 miles an hour, and that they slowed down for the corner to not exceeding 25 miles an hour; that they were south of the middle of the grade; that the Chevrolet approached the corner on the south side of the road; and that they noticed before making the turn that the Chevrolet had only one light.

After the collision plaintiff and her husband were taken to Ipswich by a passing car, and that same night Pemberton got three men to go out from Ipswich and bring in his car. These men testified to circumstances tending to show that the Studebaker rounded the corner at high speed and collided with the Chevrolet on the north side of the center of the highway, and on this state of the evidence the contention that the evidence is insufficient to show any negligence on the part of Fritts cannot prevail.

 It is urged that the court erred in overruling defendant's objection to the question asked plaintiff and her husband, at what speed the coupe was traveling as it approached the corner. They testified that they did not see the car itself, but only the light from it, and the argument is that no one, observing the light of an approaching car, can form any reliable estimate of the speed at

which it is traveling. But in this instance plaintiff and her husband were not observing the light of a car directly approaching them, but a car traveling a road at right angles to their line of travel. It is obvious that it would be quite possible from the progress of the light, for a person accustomed to observe the speed of cars to form an estimate of the speed of a car traveling in such a direction from the observer, and it was for the jury to give such weight to the estimate as it thought proper. Plaintiff herself had driven a car for years and had ridden in cars going from 40 to 50 miles an hour; her husband had driven a car for 15 years and had likewise ridden in cars going at high, as well as low, speeds. Both were therefore qualified to give an opinion as to the speed at which the Fritts coupe was traveling. Borneman v. Ry. Co., 19 S. D. 459, 104 N. W. 208.

■ Robert Owens, an engineer and land surveyor, about two weeks before the trial went with Frank Pemberton and the three men who hauled in his car on the night of the collision, and made measurements of the width of the grade, the depth of the ditch on the north side, and the distance from the point where Pemberton said his car was when it collided with the coupe to the place where they told him it was on the other side of the ditch when the three went out to haul it in, and over the objection of defendants that he had no personal knowledge as to where the cars were, he was properly permitted to testify to those measurements.

■ Plaintiff was asked what defendant Fritts said at the time of the collision immediately after they got out of the car, and replied that he used profanity and said the Chevrolet was on the wrong side of the road, and also said that Western Grocer Company carried liability insurance to protect both cars in any accident he might have on the road. Defendant Western Grocer Company moved to strike out the answer of the witness in regard to carrying liability insurance, for the reason that it is irrelevant and immaterial and has no bearing on the issues of the case and is not binding on the Western Grocer Company. The motion was denied, but the court explicitly instructed the jury that this evidence could be considered only as bearing upon the relation of principal and agent between Fritts and the grocer company. We think there was no error in this ruling, but in any event it was not prejudicial for Fritts himself, as an adverse witness, had already testified with-

out objection that Western Grocer Company paid liability insurance on his car.

Defendants allege error in the court's refusal to give a requested instruction to the effect that if plaintiff rode with her husband in the car with only one light, in violation of law, the husband as a matter of law was guilty of negligence which would be imputable to plaintiff and prevent any recovery in the action, and that the court also erred in charging that the burden of proving contributory negligence was on defendants, and in giving the jury the following portion of an instruction: "However, the mere failure of such car to have two lights, would not in any way defeat her rights in this case, unless her injuries were due in some degree to her own personal negligence. Her rights would not be defeated solely on account of any negligence there might be on the part of her husband, nor unless the failure to have two lights on the car contributed to and helped to cause her injuries."

██ Defendants assert that there was no issue of contributory negligence in the case; "that the fact that the lights were not burning is a matter of affirmative showing which is uncontradicted, and it is improper to tell the jury that any burden of proof is upon the defendants in regard thereto." But the fact that the lights were not burning is not uncontradicted. Both plaintiff and her husband testified that when they left Aberdeen both lights were burning and that they observed no diminution of the lights up to the time that they were struck by Fritts' coupe. The answer alleges contributory negligence in the plaintiff traveling in a car with only one light and on the left-hand side of the road. The charge that the burden of proof was upon defendants to prove contributory negligence was pertinent to the issues and a correct statement of the law. Whaley v. Vidal, 27 S. D. 627 and 642, 132 N. W. 242 and 248. The instruction given by the court in regard to the legal consequences of driving after dark with only one light was not erroneous, and there was no error in refusing to give defendants' requested instruction on that point. " 'The principle is that, to deprive a party of redress because of his own illegal conduct, the illegality must have contributed to the injury.' 1 Cooley on Torts (3d Ed.) 269; Spencer v. Phillips & Taylor, 219 Mich. 353, 189 N. W. 204; Beebe v. Hannett, 224 Mich. 88, 194 N. W. 542." Arvo v. Delta Hardware Co., 231 Mich. 488, 204 N. W. 134, 135.

 Further, the negligence of a husband driving a car in which his wife is a passenger, in the management of it, contributing to an accident of which the negligence of a third person has also been a proximate cause, and in which the wife is injured, will not ordinarily be imputed to her. Waring v. Dubuque Elec. Co., 192 Iowa, 1240, 186 N. W. 42; Ward v. Clark, 189 App. Div. 344, 179 N. Y. S. 466; Stevens v. Luther, 105 Neb. 184, 180 N. W. 87; Brubaker v. Iowa County, 174 Wis 574, 183 N. W. 690, 18 A. L. R. 303; Davis v. Minneapolis St. Ry. Co., 173 Minn. 186, 217 N. W. 99; 2 Blashfield's Cyc. of Automobile Law, p. 1152, § 33.

 Immediately after the collision, in response to inquiries by Fritts and Jepson, plaintiff stated in substance that she was not hurt, but about ten days afterwards she began to experience headaches and pain in the back such as she had not had before, and was compelled to go to bed for some days, and that since that time up to the time of the trial she had suffered most of the time in that manner and also from an aggravated nervous condition, and had lost in weight from 12 to 15 pounds. Medical examination made about two weeks after the accident showed a pronounced case of displacement of the womb, which the testimony showed could have resulted from the jar in the collision and which could only be cured by a serious operation, and that the headache, backache, and nervousness might be due to such displacement. Testimony by doctors on behalf of plaintiff also tended to show a dislocation of the coccyx, which might have been caused by the accident. There was the usual conflicting medical and surgical testimony in the case, surgeons testifying for defendant stating that in their opinion it would be impossible, and those for plaintiff that it would be possible, for the coccyx to be dislocated in the collision. One of the surgeons testifying on behalf of defendant says: "I think the coccyx could be injured without being broken. It might be tender just from the contusion without being either broken or dislocated. When a person is sitting it would cause more pain than when standing." The surgeons testifying on behalf of plaintiff both say that there are four bones in the coccyx and Webster's International Dictionary says the same thing. One of the surgeons on behalf of defendant who testified to 27 years' practice in New York City, Ft. Dodge, and Aberdeen, says it has five bones. With this conflict in the expert testimony we think it was for the jury to say whether plaintiff

sustained any injury to the coccyx in the collission. But disregarding the claimed injury to the coccyx, the displacement of the womb, which from the evidence in the case the jury might reasonably conclude was a result of the collision, was sufficient to justify damages in the amount found by the jury, and we are satisfied that the verdict and judgment, so far as it is against defendant Fritts, is supported by the evidence.

A serious question, and one upon which there appears to be some divergence in the authorities, is whether or not the defendant Western Grocer Company can be held liable under the facts in this case. It contends that Fritts was not its agent or servant but was an independent contractor, and that it cannot be held liable for damages resulting from his negligence. In Aldrich v. Tyler Grocery Co., 206 Ala. 138, 89 So. 289, 17 A. L. R. 617, a case in some respects similar to the instant case, it was said that the grocery company would not be liable for the negligence of its salesmen in the operation of his own car in the course of the business, where the grocery company did not in any manner control his operations and he was paid by a commission or percentage on the orders taken. On the other hand, in Dishman v. Whitney, 121 Wash. 157, 209 P. 12, 29 A. L. R. 460, it was held that a salesman canvassing in a city on a salary and commission and using his own automobile at his own expense for upkeep to reach his prospects, was not an independent contractor, but sustained the relation of servant or agent to the firm employing him, which firm was liable for injuries resulting from his negligence in the operation of the car in the conduct of the business. In that case it is said that: "Where the facts presented are as consistent with the theory of agency as with that of independent contractor, the burden is on the one asserting the independency of the contractor to show the true relation of the parties." See, also, Lewis v. National Cash Register Co., 84 N. J. Law, 598, 87 A. 345; May v. Farrell (Cal. App.) 271 P. 789.

██ In the instant case, defendants offered no evidence whatever on the subject. Fritts was either an independent contractor or he was the servant of the grocer company. Examined as an adverse witness, he testified in substance that for 6½ years past he had worked for Western Grocer Company. His territory was assigned to him by the company, for in his testimony he speaks of it as "their territory" as well as at times as "my terri-

tory." The parties to whom he could sell on credit were controlled by the company and not by him. It is a well-known fact that practically the only customers he could have were customers who bought on credit because most retail grocers purchase from the wholesalers on credit. They may discount their bills, but that simply means that they pay within the period during which credit has been given them. Fritts had no authority to refuse to sell to a customer who could not pay. If the customer could not pay, he had to take the directions of the company as to whether he should sell to such customer or not. If a customer wanted credit, he took the order and transmitted it to Minneapolis, where the credit manager decided on whether or not credit should be extended and the order filled. Fritts could not direct the shipment of a single order. All orders had to be sent to the grocer company in Minneapolis, and only such orders as the company approved were filled. While the company did not own the car, it knew that he operated the car in the conduct of the business during the past four years and it carried liability insurance for the car. We think it beyond question that the facts in the case are at least as consistent with the theory of master and servant as with the theory of independent contractor and that the burden was upon the company "asserting the independency of the contract to show the true relation of the parties." Dishman v. Whitney, supra. In McCarrier v. Hollister, 15 S. D. 366, 89 N. W. 862, 863, 91 Am. St. Rep. 695, it is said: "When the person employed is engaged under an entire contract for a gross sum in an independent operation, and is not subject to the direction and control of his employer, the relation is not regarded as that of master and servant, but as that of contractor and contractee." But in the instant case Fritts was not engaged in an independent operation; he was, as we pointed out, subject to the direction and control of the employer in the vital respect of accepting orders or extending credit. His employment does not appear to have been for any definite term, and so far as appears was subject to be terminated at any time either by the company or himself. In Cockran v. Rice, 26 S. D. 393, 128 N. W. 583, 585, Ann. Cas. 1913B, 570, it is said: "A test of the relationship between the employer and the employee is the right of the employer under the contract to control the manner and continuance of the particular service and the final result. No single fact is more conclusive as to the effect

of the contract of employment, perhaps than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself."

In the present case we must conclude that the employer had the right to control the manner of the particular service, and doubtless also had the right to end the particular service whenever he chose, because the employer offiered no evidence in the case and the burden was upon it to show its true relation to Fritts. Having failed to do this, the jury was warranted in finding, as it did by the verdict, that the relation between the company and Fritts was that of master and servant. In Cockran v. Rice, supra, defendant employed one to plow a field at a specified price per acre, nothing being said as to the number of acres he should plow and he having to furnish his own plow, tools, and motive power and having the right to exercise his own judgment as to the manner in which he should do the plowing, and it was held that the was not an independent contractor but sustained the relation of agent or servant to the landowner, and that the latter was liable for damages caused by a fire set by the authority of the plowman to burn off stubble on the ground preparatory to beginning the plowing. Unless we are prepared (as we are not) to overrule this case, we must hold that the evidence in the instant case was sufficient to sustain the verdict of the jury against the grocer company as well as against Fritts.

The judgment and order appealed from are affirmed.

SHERWOOD, P. J., and POLLEY, J., concur.

CAMPBELL and BURCH, JJ., dissent.

CAMPBELL, J. (dissenting). I think the judgment against appellant Western Grocer Company should be reversed. I do not believe the evidence shows any facts which are sufficient to justify holding the Western Grocer Company liable for any negligence of Fritts in operating his own automobile.

The facts in Cockran v. Rice, 26 S. D. 393, 128 N. W. 583, Ann. Cas. 1913B, 570, are so vastly different from those in the instant case that it would seem entirely plain that there is no conflict whatever between the decision in Cockran v. Rice and the result which I think should be reached in this case. If it should be imagined, however, that the doctrine of Cockran v. Rice necessitates holding appellant Western Grocer Company liable under the

facts upon this record, then, to that extent at least, I certainly think Cockran v. Rice should be overruled.

I may say in passing that the extremley broad implications which may be drawn from Cockran v. Rice have not previously seemed to meet with the enthusiastic approval which is accorded to them by the majority opinion in this case. See criticism of Cockran v. Rice suggested in note 20 A. L. R. 684 at page 761, and Mechem on Agency (2d Ed.) § 1454.

BURCH, J., concurs in the dissent of Judge CAMPBELL.