PETTEYS, Respondent, v. LEITH, Appellant.

(252 N. W. 18.)

(File No. 7467.   Opinion filed December 29, 1933.)

*Hitchcock, Sickel & Whiting,* of Mitchell, for Appellant.
*W. E. Weygint,* of Howard, for Respondent.

ROBERTS, J.   On July 22, 1931, between 9 and 10 o'clock in the evening, Calvin Petteys, plaintiff and respondent, was riding as a guest in an automobile owned and driven by William Leith, defendant and appellant, on a graveled highway about five miles south of Carthage, when it collided with an automobile proceeding in the opposite direction, resulting in serious injuries to the respondent.   This action was instituted, and respondent recovered judgment for personal injuries, and appellant appeals therefrom and from an order denying motion for new trial.

The appellant made a motion for a directed verdict on the ground that no negligence on his part had been shown.   This motion was denied.   The complaint alleges that the defendant was driving at an excessive rate of speed; that the headlights of defendant's automobile had not been tested; and that the headlights projected a glaring and dazzling light at the time of, and immediately preceding, the accident.

The appellant testified that he was driving his car at 30 or 35 miles an hour on the right-hand side of the highway, and that he slackened his speed as he approached the other car, and was not driving "more than 30 miles an hour" when the collision occurred. This is contradicted by the respondent.   He claims that the appellant was driving his car between 45 and 50 miles an hour, but admits that appellant slackened his speed before the collision, perhaps 5 miles an hour.   On cross-examination respondent testified:

"Q.   Did you think he was driving too fast?   A.   No, he was driving all right because there wasn't anything on the road and he was pretty sure of his driving.

"Q.   He was a good driver?   A.   Yes.

"Q.   So you weren't worried any about his driving up until the time of the accident?   A.   No, I wasn't.

"Q. You didn't tell him he was driving too fast? A. No, I didn't think he was driving too fast.

"Q. He was driving, I believe you said, close to the center of the road. A. That is where I think he was driving.

"Q. But he was on his own side of the road? A. Yes.

"Q. And he was well over on his own side of the road when the cars collided? A. I couldn't say, I don't remember, I know we were over on our side of the road but I couldn't say how far over. I know he was driving on his own side of the road at the time of the accident.

"Q. And that he had been driving on his own side of the road for some distance back? A. Well, he was driving on his own side, but he was pretty close to the center because there was no one else there. He was close to the center, but on his own side of the road for quite a distance back."

The uncontradicted evidence is that the headlights of appellant's car had not been tested to determine if they conformed to the requirements of statute. Appellant testified that his headlights "would not work on bright," and were "on dim with the beams deflected low" at the time of the accident.

The car with which the appellant collided was being driven by Mrs. Roy Pooley. She contended that she was blinded by the glaring lights of appellant's car. She testified: "There was a few seconds I couldn't see a thing. Then the impact. I was blinded by the glare of the lights on the Leith car. I was on the east side of the road until the lights blinded me. Well, I meant that I went to my side of the road until the lights blinded me. After that I do not know what happened." Laverna Pooley, another occupant of the car, testified: "I saw the car coming from the north when we turned the corner. After the corner was turned, our car pulled over to the east side of the road and started north along the east side of the road. I don't know how close my mother was driving to the east shoulder of the grade. I remember there was the blinding lights and then the collision. They were so bright I couldn't see where their car was."

Section 52, c. 251, Laws 1929, known as the Uniform Motor Vehicle Act, provides in part as follows:

"Section 52. *Requirements as to Head Lamps and Auxiliary Driving Lamps.* (a) The head lamps of motor vehicles shall be so

constructed, arranged, and adjusted that, except as provided in subsection (c) of this Section, they will at all times mentioned in Section 50 and under normal atmospheric conditions and on a level road produce a driving light sufficient to render clearly discernible a person two hundred feet ahead, but shall not project a glaring or dazzling light to persons in front of such head lamp. (b) Head lamps shall be deemed to comply with the foregoing provisions prohibiting glaring and dazzling lights if none of the main bright portion of the head lamp beams rises above a horizontal plane passing through the lamp centers parallel to the level road upon which the loaded vehicle stands and in no case higher than forty-two inches, seventy-five feet ahead of the vehicle."

▇▇▇▇ The statute provides that the headlights shall not project a glaring or dazzling light to persons in front of the headlights, but, for the purposes of the act, headlights are not glaring or dazzling if they project a light as provided in subsection (b). It is manifest that a driver of an automobile cannot be held liable on the ground that his headlights projected a glaring or dazzling light, if, in fact, they did not project a light in violation of the statute. If it were necessary to a decision, the sufficiency of the evidence to sustain the conclusion that the lights in question were glaring or dazzling would be questionable. Carriveau v. Vatapek, 204 Wis. 139, 235 N. W. 445. However, we do not think the question is necessarily involved, and for the purposes of this case we need not further consider the application of the statute. The evidence conclusively shows that, when the collision occurred, appellant's car was being driven on the right-hand side of the road. This is the testimony of both the appellant and the respondent. Mrs. Pooley testified that she did not drive her car to the left-hand side of the road, but she later changed her testimony and stated that she kept to the right until the lights of the approaching car blinded her, and after that she "did not know what happened." In the instant case no collision would have occurred if Mrs. Pooley had continued to drive on the right-hand side. Finding herself blinded by a glare of light, she was bound to take such precautions as were possible to avoid inflicting injury, and the duty to have her car under such control that she could keep to the right was not upon the record absolved by the glaring light of the approaching car. Fulker v. Pickus, 59 S. D. 507, 241 N. W. 321. The in-

juries in this case did not result from the negligent operation of the car by the defendant in failing to keep to the right. The other claim of negligent management is excessive speed. Whether a particular rate of speed is excessive depends largely on the condition of the highway and the surrounding circumstances, but, without determining whether the jury could have found that appellant was driving at an excessive rate, as we view the evidence, the speed of appellant's car could not be regarded as the proximate cause of the injury. It is the undisputed evidence that appellant was driving his car on the right half of the highway where he had a right to drive.

■ ■ Separate acts of negligence occurring contemporaneously may constitute the proximate cause of injury if injury would not have happened in the absence of either. 45 C. J. 920. Assuming, therefore, that the glaring or dazzling light of defendant's car was a concurrent cause of the accident, would such fact render the defendant liable to the plaintiff? The relation of host and guest existed between the defendant and the plaintiff, and the duties which defendant owed the plaintiff were dependent upon that relationship. We have defined that duty to be the exercise of ordinary care not to increase danger to the guest or to create a new danger. Barger v. Chelpon, 60 S. D. 66, 231 N. W. 97; Russell v. Crow, 60 S. D. 230, 245 N. W. 249. We recognize no distinction between the guest who is first invited by his host and the self-invited guest. Holdhusen v. Schaible, 60 S. D. 275, 244 N. W. 392. The liability is now defined by chapter 147, Laws 1933. It provides that a gratuitous guest shall have no cause of action unless the accident shall have been caused by "the gross negligence or wilful and wanton misconduct of the owner or operator." The plaintiff, however, sustained his injuries prior to the enactment of this statute.

■ We find no evidence which would sustain the conclusion that the defendant knew or had reason to believe that his headlights were glaring on dazzling. Under the unchallenged instruction of the court, which became the law of the case, the failure of the defendant to have his lights tested and to obtain a certificate from an official adjuster that the lights conformed to the requirements of the law was immaterial. If the glare was apparent from observation, the plaintiff had the same opportunity as the defendant

to observe their effect. Under such circumstances, did the defendant fail in any duty which he owed to the plaintiff? The rule is established by what appears to be the weight of authority that one who invites another to ride with him in his automobile does not guarantee to the guest a sound automobile; the guest must accept the vehicle as he finds it; and the duty of the owner or operator extends only to refrain from increasing the danger which the guest assumes upon entering the automobile or from adding a new danger. O'Shea v. Lavoy, 175 Wis. 456, 185 N. W. 525, 20 A. L. R. 1008; Cleary v. Eckhart, 191 Wis. 114, 210 N. W. 267, 51 A. L. R. 576; Romansky v. Cestato, 109 Conn. 654, 145 A. 156; Marple v. Haddad, 103 W. Va. 508, 138 S. E. 113, 61 A. L. R. 1248; Carroll v. City of Yonkers, 193 App. Div. 655, 184 N. Y. S. 847. The rule does not extend to concealed defects. An operator owes the duty to a guest to warn him of any known dangerous defect, and a guest does not assume a danger from such defect which is not known to him. We conclude, therefore, that the evidence is insufficient to support the verdict and judgment.

The judgment and order appealed from are reversed.

RUDOLPH, P. J., and POLLEY and CAMPBELL, JJ., concur.

WARREN, J., dissents.