**KITCHENS, Plaintiff-Appellant, v DUFFIELD, Defendant-Appellee. (Two Cases)**

Ohio Appeals, Second District, Franklin County.

Nos. 4016-4017. Decided October 6, 1947.

162

McGhee, Rowe & Evans and Frank J. Collopy, Columbus, for plaintiff-appellant.

Vorys, Sater, Seymour & Pease, Columbus, for defendant-appellee.

## OPINION

By WISEMAN, P. J.

These two actions have been appealed from the Common Pleas Court of Franklin County, and are consolidated as the

same rulings were made in both actions and the questions of law involved are identical. While the opinion herein rendered is understood to apply to both actions, the Court will use terms in the singular.

The plaintiff, Mary Eleanor Kitchens, while a passenger in an automobile owned and driven by the defendant without payment therefor was injured when the automobile in which she was riding collided with an army truck then in operation within the confines of Lockbourne Army Air Base, located within Franklin County, Ohio. In her second amended petition the plaintiff alleged that the land comprising the Air Base was acquired by the United States from private owners, ceded to the United States by the State of Ohio, and accepted by the United States War Department; that at all times referred to the Air Base was operated by the United States War Department as a military reservation and that the United States was in a state of war; that within said military reservation there were passageways upon which vehicular traffic moved; that the collision took place at the intersection of two of such passageways, to wit: Avenue "C" and 5th Street; and that said collision resulted proximately from the carelessness and negligence of the defendant in certain particulars which are set out.*

The plaintiff, William F. Kitchens, the husband of Mary Eleanor Kitchens, filed a separate action making the same allegations as above set forth, in which he seeks to recover for expenses incurred by him by reason of injuries suffered by his wife.

To the second amended petition the defendant filed a demurrer for the reason that the petition did not state facts sufficient to constitute a cause of action under the Guest Statute of Ohio, as there was no allegation that the injuries suffered were caused by the wilful or wanton misconduct of the defendant. The demurrer was sustained and the plaintiff not desiring to plead further, the second amended petition was dismissed.

Plaintiff has assigned as error:

1. The sustaining of defendant's motion to strike out certain allegations in plaintiff's petition and first amended petition;

2. The sustaining of defendant's demurrer to the plaintiff's second amended petition.

In the briefs matters are discussed which we do not regard pertinent except on trial of the case. In our judgment there is only one question presented: Does the Guest Statute

apply to the operation of motor vehicles on the roadways at Lockbourne Army Air Base?

The Guest Statute (§6308-6 GC) provides as follows:

"The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wilful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."

It is conceded that the second amended petition is demurrable, if the Guest Statute applies, as there was no allegation that the injury was caused by wilful or wanton misconduct of the operator of the automobile, the defendant herein. Vecchio v Vecchio, 131 Oh St 59. However, the plaintiff contends that the Guest Statute does not apply to the operation of motor vehicles at the Air Base. More specifically, the plaintiff contends that §6308-6 GC, only applies to the operation of motor vehicles on public highways; and that the passageways, roads and driveways within the confines of the Air Base are not public highways.

For the purpose of decision on the demurrer, the allegations that the lands occupied by the Air Base were acquired by the United States, ceded to the United States by the State of Ohio, accepted by the United States War Department, and that the Air Base was operated by the United States War Department as a military reservation, must be taken as true. At this point, application must be made and effect given to Title 16, Section 457 of the United States Code, entitled "Action for death or personal injuries within national park or other place under jurisdiction of United States; application of State laws". This section provides:

"In the case of a death of any person by the neglect or wrongful act of another within a national park or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be." (Emphasis ours.)

This section became effective February 1, 1928, and was in full force and effect at the time the collision occurred. This section requires the application of the laws of the State of Ohio. The Ohio Guest Statute became effective June 15, 1933. However, "the laws of the State" as used in the Federal statute have been construed to mean existing law as declared from time to time. Murray v Gerrick Co., 291 U. S. 315, 319; Capetola v Barclay-White Co., 48 Fed. Supp. (Pa.) 797. Thus the laws of Ohio are applicable to personal injury claims arising at the Lockbourne Army Air Base. The Ohio Guest Law, therefore, is applicable if the Guest Statute is construed to apply to both public and private roads or driveways.

Are the roadways or driveways within the confines of the Lockbourne Army Air Base private or public roads, driveways or highways? It will serve no useful purpose to refer to common law definitions as this will only lead to a confusion and contradiction of terms. The terms "private roads", "ways", "public highways" carry a different meaning at common law than under modern case law or statutes governing the operation of motor vehicles. In our opinion definitions given to "public" and "private" roads, driveways or highways under the Ohio Uniform Traffic Act, effective September 6, 1941, are helpful, but not controlling, in determining this question Reference is made to §6307-2 GC, which defines "street or highway" as follows:

"The entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel." (Emphasis ours.)

The same section defines "Private road or driveway" as follows:

"Every way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other persons."

(Emphasis ours.)

In our judgment we may take judicial notice that a military reservation owned and operated by the United States Government is under the exclusive jurisdiction of the War Department; that during wartime the public is excluded, and persons may enter only by permission of the Commanding

Officer; that the roadways and driveways in said military reservation are not open to the public as a thoroughfare for purposes of vehicular travel; that the roadways or driveways, although constructed at public expense, were constructed for the sole use of the personnel of the Air Base and of the persons having business or a mission therein. Without question, the roadways or driveways in the Air Base were under the exclusive jurisdiction and control of the War Department, and were not "open to the use of the public as a thoroughfare for purposes of vehicular travel"; but they were "used for vehicular travel by the owner", which in this case was the United States Government, "and those having express or implied permission" from the Government acting through War Department "but not by other persons".

In **State v Root, 132 Oh St 229**, wherein the defendant was charged with manslaughter for killing a person while driving an automobile on a roadway in the grounds of Longview Hospital, a determination of the question as to whether the roadway was a public highway was required. The Court held that such roadway was not a public highway, and the conviction for manslaughter was reversed. The test to be applied is found in the opinion of the Court. On page 231 the Court say:

"The essential facts as to the driveway in this case were not disputed. The driveway was located wholly on hospital grounds. It was built and maintained by the hospital. It could be relocated or vacated at any time by the hospital and the ground used for other purposes. According to the record, it was never supervised or controlled by the traffic or highway authority of city, county or state. It appears to have been built by the hospital primarily for the use of the hospital, its employees and whoever else might have business with the hospital. In this respect it may be said to be a hospital driveway rather than a road or highway to be travelled by the public generally."

The Court then discussed the fact that the hospital driveway was constructed with public funds without special permission of the General Assembly of the State of Ohio. However, the Court, on page 232, makes this comment:

"This does not mean, of course, that Longview Hospital had no right to construct this driveway for its own use and that of the public, but it does clearly indicate that such drive-

way is not to be regarded as a public road or highway in the sense in which such terms are generally used."

On page 233 the Court concludes as follows:

"We are obliged to conclude, therefore, that where a driveway, leading into and located wholly upon State Hospital grounds, is built, maintained and controlled by the hospital for its own use and the public having business therewith, and where such driveway was never dedicated or legally used as a public thoroughfare, it does not come within the purview of 'roads or highways' as found in §12404-1 GC, defining manslaughter in the second degree."

As we view it, the fact that a road, highway or driveway has been constructed at public expense does not necessarily mean that such road, highway or driveway will be open to the use of the public as a thoroughfare for purposes of vehicular travel. In a general way, roads, highways or driveways may be classified in at least four classes with respect to the expense of construction and use, as follows: constructed at public expense for unrestricted use of the public; constructed at public expense for limited or restricted use by persons given express or implied permission by the owner; constructed at private expense for public purpose; constructed at private expense for private purpose. In our judgment a public road, highway or driveway may be defined as a way open to the public at large without distinction, discrimination, or restriction, except such as is incident to regulations calculated to secure to the general public the largest practical benefit therefrom and enjoyment thereof. The prime essential of a public highway is the right to travel by all the world, and not the actual exercise of the right. The proper test is the use to which such roadways or driveways are put. In our opinion when the proper test is applied to the facts in this case, the roadways or driveways at Lockbourne Army Air Base do not properly fall in either class 1, 3 or 4, but in class 2 as stated above. In our considered opinion such roadways or driveways are private roadways or driveways and not public highways.

Does the Guest Statute (6308-6 GC) apply to private roadways and driveways? As there are no reported cases in Ohio determining this question, this case becomes one of first impression. In Ohio, at common law a driver of a motor vehicle was liable to a guest for ordinary negligence, whether such motor

vehicle was operated on a public highway or a private roadway or driveway. This statute being in derogation of the common law it must be strictly construed. **Miller v Fairley, 141 Oh St 327.** It must be observed that the Guest Statute does not expressly limit its application to public highways. It is significant that no such limitation is found in the statue; its provisions are broad and all inclusive. It is urged that the term "operator" as used in the Guest Statute should be given the meaning of "operator" which is defined in §6290 GC, par. 14, as follows: " 'Operator' includes any person who drives or operates a motor vehicle upon the public highways", and that the words "motor vehicle" as used in the Guest Statute should be given the same meaning as is found in §6290 GC. It must be noted that §6290 GC provides: "Definition of terms, as used in this chapter and in the penal laws, except as otherwise provided"; while the Guest Statute and Section 6290 are both found in Chapter 21, entitled "Motor Vehicles", it must also be observed that the word "operator" is also defined in §6307-2 GC, which is in the same chapter and a section in the Uniform Traffic Act, as follows:

" 'Driver or operator'. Every person who drives or is in actual physical control of a vehicle, trackless trolley or street car."

It will be observed that this definition does not confine the meaning of "operator" to a driver of a motor vehicle on a public highway. The Uniform Traffic Act did not become effective until September 6, 1941. It would be more appropriate to consider the definition of "operator" as defined in §6290 GC, as enacted in 1933 at the same session of the Legislature at which the Guest Statute was passed, and which is found in 115 Ohio Laws, page 454, wherein "operator" is defined as follows:

" 'Operator' includes any person who drives or operates a motor vehicle upon the public highways."

This section was passed as a regulatory measure under the police power of the State. **State, ex rel. v Taggart, 134 Oh St 374.** The State has never adopted the policy of passing regulatory measures relative to the operation of motor vehicles on private property, private roadways or driveways. For this reason, definitions given in other parts of the code such as §6290 GC which is a part of the Certificate of Title Law (§6290

to 6290-17, Inc., GC) and the Uniform Traffic Act (§6307-1 to 6307-110, Inc., GC) although a part of the same chapter in which the Guest Statute (§6308-6 GC) is found, have little or no controlling force in determining the intention of the Legislature when is enacted the Guest Statute. The Guest Statute is not a part of the Certificate of Title Law, nor of the Uniform Traffic Act, and is not in pari materia with sections in said acts. The Guest Statute operates in the field of substantive law.

The purpose of the Guest Statute, as assigned by text writers and authors on the subject, was to remedy an evil or mischief which arose by a guest pressing claims for personal injuries against the driver in which both the guest and the driver were guilty of collusion or fraud in effecting recovery. The same motive which prompted the Legislature to deprive a guest of his common law right of action when the accident occurred when the motor vehicle was being operated on a public highway, applies with equal force to the operation of a motor vehicle on a private roadway, highway or driveway. We approve of the observation made by the lower court on a motion to strike that it is just as reprehensible for a guest to sue his host for ordinary common law negligence in the operation of his motor vehicle on a private way as it would be on a public thoroughfare. No reason is assigned why the state Legislature should make a distinction. Unquestionably it lay within the power of the Legislature to make such distinction. If it had intended to do so it would have used apt language to accomplish such purpose. As heretofore stated, it is significant that Guest Statute contains no provision with respect to place of operation.

In interpreting a statute and in giving effect to what appears to be the legislative intent, such statute should be given a fair and reasonable construction in conformity to its general object, in order to effectuate such object and purpose, and should not be given such an interpretation as would thwart such purpose. 37 O. Jur. 657. Courts should and frequently do refer to the legislative purpose, aim, or motive; and the design to be accomplished thereby. 37 O. Jur. 662. In interpreting a statute the mischief or evil to be remedied should be given great consideration by the Court. In 37 O. Jur. 668, is found the following statement:

"The terms of a statute are to be interpreted in the light of its historical background. That is to say, where the language of a statute is obscure or of doubtful meaning, the court,

in construing such statute, may with propriety recur to the history of the times when it was passed, to the attending circumstances at the time the law was adopted, to the cause, occasion, or necessity for the law, to the imperfections to be removed, or, in other words, to the mischief sought to be avoided and the remedy intended to be afforded. Indeed, the mischief to be remedied has been declared to be the greatest subject for the court's consideration when it comes to pass upon the interpretation of doubtful provisions.

"Where a statute is designed to give a substantial remedy for an admitted evil, the language should be given a fair construction in order to advance the remedy and correct the evil sought to be abated. However, if the legislature has not made the remedy coextensive with the evil by the terms of their act, the court may not do it by construction. On the other hand, the language, when clear and comprehensive, is not to be limited in view of the particular instances which may be supposed to have led to the adoption of the rule, but the act should be held to embrace all cases fairly coming within its terms if they are also within its reason and spirit." (Numerous Ohio cases cited.)

In Miller v Fairley, supra, the Court had before it the construction of the Guest Statute. On page 335 of the opinion the Court say:

"The language of a statute, designed to provide a substantial remedy for an admitted evil, should be given a fair construction in order to advance the remedy and correct the evil sought to be abated. **Iroquois Co. v Mayer, 80 Oh St 676, 89 N. E. 90.** However, if the General Assembly has not made the remedy coextensive with the evil by the terms of the act, a court cannot do so by construction. **State, ex rel. Peters v McCollister, 11 Ohio, 46, 56.** The statute must be construed to effectuate its purpose, but, being in derogation of the common law and the rights of those who may be injured by the negligent operation of an automobile while being transported therein, its general provisions must be strictly construed, while the exception under consideration in this case must be liberally construed in favor of those who come within the purview of such exception." (Cases cited.)

While the Court held that exceptions to the statute should be liberally construed, it had before it the question as to whether the plaintiff had made payment for transportation.

In the case at bar the plaintiff does not fall in the category of an exception and such a contention cannot be successfully supported.

In giving consideration to applicable rules of statutory construction, in considering the mischief or evil to be remedied and the intent of the Legislature as drawn from all inclusive provisions of the statute, we are of the opinion that the Guest Statute applies to the operation of motor vehicles on private roadways, highways or driveways, as well as on public highways. The demurrer to the second amended petition was properly sustained.

Because of the view we take of this matter and the construction given to the Guest Statute, we are of the opinion that the trial court did not commit error in sustaining motions to strike certain allegations from the petition and the first amended petition. Judgment affirmed.

MILLER and HORNBECK, JJ., concur.