PETERSON, Appellant v. SNELL, Respondent

SNELL, Third Party Plaintiff v. STONE, Third Party Defendant

(127 N.W.2d 142)

(File Nos. 10078, 10082.  Opinion filed March 27, 1964)

**Whiting, Lynn, Freiberg & Shultz,** Rapid City, for Plaintiff and Appellant.

**Hanley, Costello & Porter,** Rapid City, for Defendant and Third-party Plaintiff and Respondent.

**Bangs, McCullen, Butler & Foye,** Rapid City, for Third-party Defendant.

HANSON, J. Lee Etta Peterson was injured while riding in an automobile operated by defendant, Claudia Snell. In this ensuing action the jury returned a verdict in favor of plaintiff in the amount of $24,000. Thereafter defendants' motion for judgment notwithstanding the verdict was granted and plaintiff appeals. Defendants' conditional cross appeal seeking a review of all adverse rulings of the trial court in the event of a reversal has heretofore been dismissed upon motion of plaintiff.

This is another Guest Act case involving the application of SDC 44.0362 which provides:

> "No person transported by the owner or operator of a motor vehicle as his guest without compensation for such transportation shall have cause of action for damages against such owner or operator for injury, death, or loss, in case of accident, unless such accident shall have been caused by the willful and wanton misconduct of the owner or operator of such motor vehicle  *   *   *."

As there is no assertion of willful and wanton misconduct the sole issue is whether or not plaintiff was a guest or passenger in Claudia Snell's automobile at the time of the accident.

In reviewing the evidence plaintiff is entitled to have the same reviewed in the light most favorable to her and to have the benefit of every favorable inference that can fairly be drawn therefrom. Fossum v. Zurn, 78 S.D. 260, 100 N.W.2d 305. Considered accordingly, it appears the plaintiff, Lee Etta Peterson, the defendant, Claudia Snell, and Almyrna Snyder were all teenage members of the First Church of God of Rapid City. All of the girls were members of the Youth Fellowship and choir. Lee Etta was president of the fellowship group and Claudia was secretary. By virtue of their church activities Lee Etta and Claudia had some associations together. The relationship between the two girls was not otherwise close. Lee Etta attended North Junior High School as a freshman while Claudia attended Rapid City High School as a sophomore. Lee Etta and Almyrna, on the other hand, were close friends. They attended

the same school, studied together, and visited in each other's home.

The three girls were together Friday afternoon, August 25, 1961 for the purpose of preparing a trio at the request of their pastor for presentation on the following Sunday church program. They first called Mrs. Ardell Hermanson, the church pianist and choir director, to help them practice as a trio. She was busy. The girls then went to the home of Mrs. Nell Snyder for assistance. Claudia had taken music lessons at the Snyder home and the girls had practiced church music there on prior occasions. The girls rode to the Snyder home in an automobile operated by defendant and owned by her father. After practicing at the Snyder home for a short time the girls drove to an apartment house in search of Irene Fankhauser for further assistance in their hymnal practice. Miss Fankhauser was a director of the senior youth group of the Church of God and also assistant pianist. Miss Frankhauser could not be found and about 4:30 p. m. Claudia apparently started on the return trip to deliver Lee Etta and Almyrna to their respective homes. While proceeding east on Interstate 90 Claudia so operated her automobile it went off the highway and after rolling over several times came to rest upright in the median between the two lanes of the divided highway. Lee Etta was seriously injured.

Plaintiff contends she was a passenger and not a guest. Her theory is that at the time of the accident the three girls were on the trip for the specific purpose of preparing a musical number at their pastor's request. Thereby they had a common objective tending toward the promotion of a mutual interest for their common benefit. They were not on a joy ride and as it was not motivated by friendship, hospitality, or companionship Lee Etta occupied the status of a passenger rather than a guest. Plaintiff largely relies on the case of Forsling v. Mickelson, 66 S.D. 366, 283 N.W. 169, as authority for her contention that our guest statute does not apply to an occupant of a motor vehicle who is there for the promotion of some mutual interest with the driver which operates for their common benefit, other than social. Incidentally, the Forsling opinion was only concurred in by two members of the court.

■ ■   In Forsling the rule contended for by plaintiff was included in the following quotation from Section 2292, 4 Blashfield Cyclopedia of Automobile Law and Practice:

"One important element in determining whether a person is a guest within the meaning and limitations of such statutes is the identity of the person or persons advantaged by the carriage. If, in its direct operation, it confers a benefit only on the person to whom the ride is given, and no benefits, other than such as are incidental to hospitality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes; but, if his carriage tends to the promotion of mutual interests of both himself and the driver and operates for their common benefit or if it is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactments. Of course, a passenger for hire is not within their operation, regardless of whether the passenger or some one else pays or promises to pay for the transportation."

However, the quotation contained the further important qualifying clause:

"The fact that it is contemplated that some indirect benefit will accrue to the operator of the automobile, to which the carriage will have in some degree contributed collaterally or by way of inducement, is not sufficient to make the carriage one for mutual benefit within the rule as stated."   .

The nature of the benefit one must confer on a driver in order to become a passenger was further fully considered in Scotvold v. Scotvold, 68 S.D. 53, 298 N.W. 266, in which the court said it must be "sufficiently real, tangible and substantial to serve as the inducing cause of the transportation, and to operate to completely overshadow any considerations of mere hospitality growing out of friendship or relationship." This rule has been consistently followed and applied in numerous subsequent cases. See Peters v. Hoisington, 72 S.D. 542, 37 N.W.2d 410; Antonen

v. Swanson, 74 S.D. 1, 48 N.W.2d 161, 28 A.L.R.2d 1; Gunderson v. Sopiwnik, 75 S.D. 402, 66 N.W.2d 510; Tennyson v. Kern, 76 S.D. 136, 74 N.W.2d 316; Kleinhesselink v. Porterfield, 76 S.D. 577, 83 N.W.2d 191; and Cluts v. Peterson, 79 S.D. 462, 113 N.W.2d 273. Therefore, the mere fact a rider and driver of a motor vehicle have a common interest or purpose in making a trip is not alone sufficient benefit to the driver to constitute payment of compensation under our guest statute. Although it may be easier to find compensation given when the trip has a commercial or business flavor, as in Forsling v. Mickelson, 66 S.D. 366, 283 N.W. 169, (plaintiff passenger was a farmer member of Canton Band on booster trip to advertise city carnival) and Kleinhesselink v. Porterfield, 76 S.D. 577, 83 N.W.2d 191, (son accompanied father on trip to auction to assist in purchase of cattle) the purpose of the trip is an important factor, but it is not always controlling. The essential elements are (1) the driver must receive some benefit from the transportation, either alone or in common with the rider, and (2) such benefit must be sufficiently real, tangible and substantial to serve as the inducing cause of the transportation so as to operate to completely overshadow any considerations of mere hospitality growing out of friendship or relationship.

■ As the trial court correctly concluded the facts in the present case do not exclude plaintiff from the operation of the guest statute. The three girls were drawn together for religious-social purposes resulting from their mutual interest and participation in the youth fellowship and choir activities of their church. The ride was a natural amity or social courtesy arising out of such relationship. It was a convenience to plaintiff and for her benefit. We are unable to find evidence of a more substantial or tangible benefit accruing to defendant which reasonably could be considered the inducing cause of the transportation. The fact defendant might derive some inner personal or spiritual satisfaction from her participation in the church trio is not sufficient.

The same result was reached by other courts in the following factually related cases: pastor of church transporting members of Women's Guild to a regional meeting, Born v. Matzner's

Estate, 159 Neb. 169, 65 N.W.2d 593; occupants of car, including defendant driver, members of a fraternal drill team on way to attend and participate in a state meeting, Sunderman v. Wardlaw, 170 Neb. 70, 101 N.W.2d 848; two friends of long standing riding in defendant's car to attend church of which defendant was a member and plaintiff a potential member, Winn v. Ferguson, 132 Cal.App.2d 539, 282 P.2d 515; defendant's son using automobile for purpose of transporting, without compensation, members of high school band of which plaintiff was a member to "Band Day" at state university, Klatka v. Barker, 124 Colo. 588, 239 P.2d 607; plaintiff, a cheerleader at Heelan High School in Sioux City being transported to a basketball game at Sioux Falls by defendant with the consent of the athletic director but without compensation, instructions, or directions concerning the trip other than to drive carefully, Fessenden v. Smith, Iowa, 124 N.W.2d 554, (as the accident occurred in South Dakota the Iowa court construed and applied the South Dakota Guest Statute SDC 44.0362); and where plaintiff and defendant were members and officers of the Women's Missionary Society of the First Methodist Church of Texarkana on way as delegates to attend East Texas District Conference of the Society, Henry v. Henson, Tex.Civ.App., 174 S.W.2d 270, in which the court pertinently stated that both parties "were engaged in advancing missionary work, which is a necessary function of that great religious institution, the Methodist Church. These ladies were devoting much of their time to the spiritual uplift of their community through the channel of their society. Their work was for the church, and the benefit accruing to them was the advancement of the Christian religion through their joint efforts as delegates to this conference and the Christian education there received by each of them. But we are unable to say from the facts in this record that such mutual benefit accruing to each of them, or that the benefit to be derived from the trip by Mrs. Henry, the transporter, was of such nature 'as to change the status of plaintiff (appellee) from that of a guest.' "

■ We have also examined the cases cited by plaintiff in which the guest statute was held not to apply such as Woodman v. Hemet Union High School Dist., 136 Cal.App. 544, 29 P.2d 257, involving a 12-year-old boy riding with other Boy Scouts to gather

sand and rocks to build a fireplace at the scout barracks in an old dilapidated truck under the control of the defendant scoutmaster; Thuente v. Hart Motors, 234 Iowa 1294, 15 N.W.2d 622, where plaintiff businessman was injured assisting in a patriotic community scrap drive while riding in a truck donated by another businessman; Truitt v. Gaines, 3 Cir., 318 F.2d 461, where child injured his ankle during a school lunch period and a few days later defendant teacher took the child to see a doctor at the request of the child's mother; and Vest v. Kramer, 158 Ohio St. 78, 107 N.E.2d 105, involving another 12-year-old Boy Scout injured on a troop scrap paper drive while riding on top of a pile of papers in a trailer attached to the assistant scoutmaster's car. Such cases reflect a stricter interpretation of the term "guest" and a more liberal interpretation of the term "compensation" than this court feels free to adopt. This may be explained, in part, by the fact that such courts are at liberty to strictly construe their guest statute as being in derogation of the common law whereas we are compelled to liberally construe the same to effectuate its legislative purpose. SDC 65.0202; Scotvold v. Scotvold, 68 S.D. 53, 298 N.W. 266.

Affirmed.

BIEGELMEIER, P. J., and RENTTO and HOMEYER, JJ, concur.

ROBERTS, J., concurs in result.