NEPSTAD, Respondent v. RANDALL, Appellant

(152 N.W.2d 383)

(File No. 10324. Opinion filed July 26, 1967)
Rehearing denied October 16, 1967

**Morgan & Fuller, J. L. Morgan,** Mitchell, for defendant and appellant.

**Davenport, Evans, Hurwitz & Smith, Ellsworth E. Evans,** Sioux Falls, for plaintiff and respondent.

ROBERTS, Judge.

Plaintiff was injured on June 26, 1962, while on the golf course of the Mitchell Country Club near Mitchell. When the golf cart on which plaintiff was riding ran out of gasoline, defendant invited plaintiff and his golf partner to ride on the hood of the golf cart driven by him. Plaintiff charged defendant with negligence in operation of the golf cart causing plaintiff to be thrown to the ground. The record shows that the golf cart is a three-wheeled vehicle propelled by a gasoline motor; it is equipped with two seats, foot and hand brakes, conventional steering wheel and a rack for golf clubs. Seated at the right of defendant prior to the accident was George Millen and plaintiff and Robert Buche were sitting on the hood. The jury returned a verdict for plaintiff in the amount of $25,000. Motion for new trial was denied and defendant appeals.

The amended complaint alleges:

"That the plaintiff, without payment of compensation, was being transported upon said golf cart upon said golf course, and while plaintiff was riding upon the right front corner of said golf cart, the defendant carelessly and negligently turned said golf cart to the left while said cart was moving forward, thereby throwing plaintiff to the ground with great force and violence.

"That as the direct and proximate result of said negligence and said carelessness on the part of said defendant, plaintiff sustained a broken ankle and other injuries; that said injuries caused pain and necessitated medical and hospital care; that the fair and reasonable value of such medical and hospital attention, including physical therapy, amounted to approximately $1,000; that plaintiff was unable to take care of his business by

reason of said injuries, is partially incapacitated by reason of said injuries, and plaintiff has been informed and believes and therefore alleges that the said injuries to his ankle and leg are permanent and will always partially incapacitate him and prevent him from doing his work and taking care of his business in the future; further, that said injuries will continue to cause him pain and suffering in the future."

Defendant's answer asserted failure of the complaint to state a claim upon which relief could be granted, denied generally the allegations of the complaint and averred the defenses of assumption of risk and contributory negligence.

Defendant prior to trial made a motion to dismiss the amended complaint stating that since it appears from its allegations that defendant was operating a "motor vehicle" within the meaning of the guest statute and that plaintiff was riding thereon as the guest of defendant without compensation it follows that in the absence of allegation that the conduct complained of was something more than ordinary negligence the complaint does not state a claim upon which relief can be granted. One of the grounds also urged in support of this position in defendant's motions for directed verdict and for new trial was that plaintiff failed to prove that plaintiff's injury was caused by willful and wanton misconduct of the defendant.

SDC 44.0362 reads as follows:

"No person transported by the owner or operator of a motor vehicle as his guest without compensation for such transportation shall have cause of action for damages against such owner or operator for injury, death, or loss, in case of accident, unless such accident shall have been caused by the willful and wanton misconduct of the owner or operator of such motor vehicle, and unless such willful and wanton misconduct contributed to the injury, death, or loss for which the action is brought; and no person so transported shall have such cause of action if he has willfully or by want of ordinary care brought the injury upon himself."

The trial court concluded that the golf cart at the time of the accident was not a "motor vehicle" within the meaning of this statute; that these words refer to a vehicle which operates upon a public highway. The guest statute is contained in Chapter 44.03 of the South Dakota Code of 1939. SDC 44.0301 contains definitions of terms in the chapter that are controlling unless as therein provided "the context otherwise plainly requires." Sub. (1) of this section defines "vehicle" as follows: "(E)very device in, upon, or by which any person or property is or may be transported or drawn **upon a public highway,** excepting devices moved by human power or used exclusively upon stationary rails or tracks; provided that for the purposes of this chapter, a bicycle or a ridden animal shall be deemed a vehicle" (Emphasis added), Sub. (2) of the same section defines "Motor Vehicle" as follows: "(E)very vehicle, as herein defined, which is self-propelled". If a motor driven golf cart were being operated upon a public highway for the purpose of transporting persons or property, it would undoubtedly be considered a "motor vehicle" within these statutory provisions. They contain reference to vehicles by which any person or property "may be" transported or drawn upon a public highway. The provisions of SDC 44.03 are regulatory in nature governing the use of vehicles upon public highways and the conduct of owners and drivers of vehicles operated thereon. The language in question refers to the type or class of self propelled vehicles primarily designed for transportation of persons or property on public highways. We agree with the holding of the Supreme Court of Wisconsin in Nelson v. Ohio Casualty Insurance Co., 29 Wis.2d 315, 139 N.W.2d 33, to the effect that a highway safety statute was not applicable to a class of motor propelled vehicles so designed that they might never be used for transporting persons or property upon a public highway and that such a motor vehicle is not within the terms of the statute unless being operated upon a public highway at the time of an accident. We hold that a motor driven golf cart while being operated on a golf course is not a "motor vehicle" within the meaning of the guest statute.

In the absence, therefore, of statutory provisions otherwise providing, there existed the common law relationship between the parties of guest and host. This court has held that

under such circumstances it is the duty of the host to exercise ordinary care to prevent injury to his guest. Barger v. Chelpon, 60 S.D. 66, 243 N.W. 97; Holdhusen v. Schaible, 60 S.D. 275, 244 N.W. 392. In other words, with respect to the operating conditions of the vehicle which are known or should be known to the guest there is no actionable breach of duty on the part of the host or operator of the vehicle; the duty of the host extends only to refrain from increasing the danger or creating a new danger. Petteys v. Leith, 62 S.D. 149, 252 N.W. 18; Hall v. Hall, 63 S.D. 343, 258 N.W. 491; Wakefield v. Singletary, 76 S.D. 417, 80 N.W.2d 84.

Defendant contends that plaintiff assumed the dangers incident to the position which he took on the hood of the golf cart; that there was no handle or other part of the vehicle which he could readily grasp and no place to brace his feet to prevent being thrown from the vehicle traveling over bumpy stretches of the golf course or upon the turning of the highly maneuverable three-wheeled vehicle; and that knowing and appreciating the hazards involved plaintiff did not exercise ordinary care for his own safety. If plaintiff's exposure of himself to known hazards constituted a failure to exercise ordinary care for his own safety, it does not follow that his conduct was the proximate cause of his injury. Plaintiff did not assume the risk of danger or hazard caused by defendant driver's unexpected negligence. Zeigler v. Ryan, 65 S.D. 110, 271 N.W. 767; Stoll v. Wagaman, 73 S.D. 186, 40 N.W.2d 393. The conduct of a person which furnishes the situation or condition whereby an unforeseen and unanticipated act causes his injury will not bar recovery for the injury.

The record discloses that there was ample evidence, much of which was without dispute, to justify submission to the jury of the question of negligence on the part of the defendant. Defendant testified on cross examination concerning the accident as follows:

"Q Now, this wasn't a case where you slowed down and made a turn, was it? A As I recall, we hadn't done much slowing down before we turned simply be-

cause we didn't know exactly where the ball was. When we saw the ball, the slowing down took place.

"Q And when I took your deposition back last spring, I asked you about how you made this turn. * * * I said, 'Question: About how fast do you think you were going when you made the turn? Answer: I don't think we were slowed down too much from the normal speed. I think it was a pretty fast turn, as I remember it. Mr. Buche went off of the front side and Mr. Nepstad the right side, and the cart turned sharply to the left.' Now, is that the question I asked you and the answer you gave me? A That's right.

"Q And so that we have this clear, you didn't try to slow that cart down and then make a turn, but rather, what you did was, you came up there and you made a sharp turn to the left, didn't you? A Right.

* * * * * *

"Q Well, maybe you don't like my words, Mr. Randall, but suppose we put it this way. I asked you previously whether this was a prank or not, and you said you weren't sure. Do you recall your testimony along that line? A Yes.

"Q But, in any event, what you sought to do and what you accomplished was simply this. You came up there with that cart, you made that sharp turn with the front wheel—and there's only one front wheel? A Right.

"Q It's got that big tire on it and that brought the cart to an instant stop insofar as forward motion was concerned, by causing the front end to go off to the left, didn't it? A Yes.

"Q And you knew in your own mind when that happened that Nepstad was going out toward the right and the other man was going off more or less straight forward? A Yes.

"Q    And you knew when you started using the word momentum a little while ago and then changed it, but you knew exactly what the momentum was going to do, from your experience didn't you?    A    Right."

Defendant apparently admits that the instructions of the court accurately stated the law under the applicable comparative negligence statute, but asserts specifically that such statute did not apply to a guest statute action. Plaintiff sustained his injury prior to the effective date of Chapter 149, Laws 1964, amending the comparative negligence statute (SDC 1960 Supp. 47.0304-1), and the amendment requires no consideration. Petteys v. Leith, supra. The objection was not well taken since proof could be made and recovery had for ordinary negligence.

Defendant contends that the evidence introduced did not furnish a basis for the giving of instructions permitting recovery for loss or diminution of earning power. Defendant does not complain of the instructions allowing recovery for the reasonable value of medical and hospital services and for pain and suffering and there is no claim that the verdict is excessive.

Dr. Harvard Lewis, the attending physician, testified that he found a compound fracture dislocation of the right ankle and that there was a fracture of the small bone of the leg and a displacement of the foot "toward the outside laterally, with  *   *   * approximately a half an inch variance from normal"; that he reduced the fracture and a week or ten days later applied a plaster cast covering the leg from the toes to the groin. He testified that at the time of the trial the limitation in the flexion of the ankle required the plaintiff to get down on one knee rather than to squat in a normal manner; and that in his opinion there is an eleven per cent permanent disability in the ankle.

Plaintiff was 59 years old when injured, earning prior to the accident $4.45 per hour as a bricklayer, and at the time of trial had a life expectancy of 14.14 years. Plaintiff testified as to his physical condition before the accident and his disability thereafter; that his earnings were reduced; that he did not work in the year following the accident and for some time thereafter

his ordinary activities were greatly curtailed because of the injury; and that he cannot when laying brick or concrete blocks climb or stoop over as he did before his injury.

The general rule is that a plaintiff who is injured in his person through the fault of another may recover for impairment of earning capacity measured by the difference between the amount which he was capable of earning before his injury and that which he is capable of earning thereafter. Allen v. Martley, 77 S.D. 133, 87 N.W.2d 355; Weidner v. Lineback, 82 S.D. 8, 140 N.W.2d 597. Plaintiff does not challenge this rule or claim that the instructions considered as a whole do not correctly state the law thereunder, but asserts that there is no evidentiary basis for their application. Defendant contends plaintiff's testimony with reference to his hourly wage as a bricklayer and diminution of income since the accident furnished an improper guide for consideration of the jury. We have recognized that what an injured person has been able to earn in the past in an occupation in which he was engaged is some evidence of his ability to earn in the future. Allen v. Martley, supra. The measure of damages of future earning power is determined by the jury taking into consideration prior ability of the injured person and the extent to which his injuries affect his power to earn together with his age, skill and habits of industry. Davis v. Holy Terror Mining Company, 20 S.D. 399, 107 N.W. 374. Proof with mathematical certainty is not required. 22 Am.Jur., Damages, § 93; see also Peters v. Hoisington, 72 S.D. 542, 37 N.W.2d 410. The evidence was sufficient for the jury to make an allowance for impaired earning capacity as a part of plaintiff's general damages.

Judgment affirmed.

HOMEYER, P. J., and RENTTO, J., concur.

BIEGELMEIER, J., concurs specially.

HANSON, J., dissents.

BIEGELMEIER, Judge (special concurrence).

I concur in the result reached and in the opinion, but desire briefly to note when the Act Regulating the Operation of Vehicles on Highways, which is now Chapter 44.03 of the 1939 Code, was passed as Ch. 251, Laws of 1929 it did not include present Section 44.0362, the guest statute, which came into being as Ch. 147, Laws of 1933. So neither the definition of a "motor vehicle" in Ch. 251, Laws of 1929 nor its definition in the Licensing Act (Ch. 183, Laws of 1931) did by statutory direction apply to the 1933 guest statute. Both the 1929 Regulating Act and the 1931 Licensing Act limited the definitions of motor vehicles only when used in each act and the 1933 guest statute used the term motor vehicle without definition or further reference. This situation continued from July 1, 1933 to July 1, 1939, when the 1939 Code became effective and the guest statute appeared as SDC 44.0362 as part of Regulating Act provisions. The fortuitous location therein by the Code Revisors cannot be held to be a change in the law, City of Redfield v. Wharton, 79 S.D. 557, 115 N.W.2d 329, nor did the Revisors indicate a change as the note thereto mentions only the omission of the term gross negligence in accord with the Melby v. Anderson, 64 S.D. 249, 266 N.W. 135, opinion and adding the last phrase as to contributory negligence. Nevertheless I agree with the resulting definition of motor vehicle in the opinion. This seems to be the conclusion of the Wisconsin Supreme Court which took into consideration differing statutory enactments in Rice v. Gruetzmacher, 27 Wis.2d 46, 133 N.W.2d 401.

HANSON, Judge (dissenting).

The primary question is whether or not a gratuitous passenger riding in a self-propelled car on a private golf course is a guest within the contemplation of our guest statute.

The golf car in question is a miniature pickup in design. Its gasoline motor is in front covered with side panels and a hood like a conventional car. It is equipped with a windshield, steering wheel, balloon tires, gear shift, self starter, transmission, seats for two persons, a luggage rack in the rear, bumpers, hand and foot brakes, headlights, a tail light, and a cloth canopy top. Records in the South Dakota Motor Vehicle Department, which

we may judicially notice, show similar devices are licensed to operate on the public highways of this state. Furthermore, golf cars are now in such common use this court may judicially notice they may be, and are, used on the public streets and highways of this state to transport persons and property. They are commonly used by motels and at airports as utility vehicles.

Our Guest Statute is written in the following broad and unqualified language:

"No person transported by the owner or operator of a motor vehicle as his guest without compensation for such transportation shall have cause of action for damages against such owner or operator for injury, death, or loss, in case of accident, unless such accident shall have been caused by the willful and wanton misconduct of the owner or operator  *  *  *". SDC 44.0362.

According to the plain language of the act it obviously was intended to apply to the owner and operator of any motor vehicle in any accident. The unrestricted term "motor vehicle" is used and there is no territorial limitation on coverage, such as "a highway". This reflects its origin as general substantive law. See Chapter 147, Laws of 1933 amending Sec. 801 Rev.Code of 1919. It was transplanted into Chapter 44.03 of the 1939 Code by the Revisors. Its present location in Chapter 44.03, SDC pertaining to regulations of motor vehicles does not change its broad purpose or its general substantive law character. A similarly enacted guest statute in Ohio was deemed to "operate in the field of substantive law" and was not in pari materia with other sections of the Uniform Traffic Act. Kitchens v. Duffield, 83 Ohio App. 41, 76 N.E.2d 101. In holding their guest statute applied to the operation of motor vehicles on private roadways as well as public highways the Ohio court pertinently commented:

"The same motive which prompted the Legislature to deprive a guest of his common law right of action when the accident occurred when the motor vehicle was being operated on a public highway, applies with equal force to the operation of a motor vehicle on a private roadway, highway or driveway  *  *  *  it is just as

reprehensible for a guest to sue his host for ordinary common law negligence in the operation of his motor vehicle on a private way as it would be on a public thoroughfare. No reason is assigned why the state Legislature should make a distinction. Unquestionably it lay within the power of the Legislature to make such distinction. If it had intended to do so it would have used apt language to accomplish such purpose. As heretofore stated, it is significant that the Guest Statute contains no provision, with respect to place of operation."

This is reasonable and logical and corresponds with the general rule stated in 8 Am.Jur.2d, Automobiles and Highway Traffic, § 474, p. 39, as follows: "In the absence of language in the statutes to indicate any intention to restrict their operation to the public highways, guest statutes are applicable where the motor vehicle in which the guest was being transported was, at the crucial time, being operated on a private way or private property." See also Annotation "Applicability of guest statute where motor vehicle accident occurs on private way or property". 64 A.L.R.2d 694.

Likewise, the unrestricted language of our guest statute applies it to an accident occurring on private ways and private property. Its operation is not limited to accidents in, upon or near a highway. Its coverage is much broader in this respect than others, such as the California Act, which is expressly confined to accidents and vehicles "upon a highway". Section 17158 Califorinia Vehicle Code. The California restriction was properly imposed by legislative amendment. If our law is to be similarly circumscribed, it should be done by our legislature.

The unqualified words "motor vehicle" is a generic term which in its broadest sense includes all self-propelled land vehicles. As the guest statute is part of our general substantive law it could be so construed. However, without laboring the point we may accept the majority view that the statutory definition of the term "motor vehicle" appearing in Chapter 44.03 relating to the regulation of motor vehicles applies. In this regard SDC 44.0301 provides:

"DEFINITIONS. Terms used in this chapter, unless the context otherwise plainly requires, shall mean:

(1) 'VEHICLE', every device in, upon, or by which any person or property is or may be transported or drawn upon a public highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks; provided that for the purposes of this chapter, a bicycle or a ridden animal shall be deemed a vehicle;

(2) 'MOTOR VEHICLE', every vehicle, as herein defined, which is self-propelled;

(3) 'MOTORCYCLE', every motor vehicle designed to travel on not more than three wheels in contact with the ground, except any such vehicle as may be included within the term 'tractor' as herein defined".

Accordingly, the term "motor vehicle" appearing in our guest statute includes every self-propelled device in, upon, or by which any person or property is or may be transported or drawn upon a public highway.

A motorized golf car fits this definition like bark on a tree. It so clearly and literally complies with the statutory definition of a motor vehicle there is no room for judicial construction. There is no ambiguity. A motorized golf car is a self-propelled device upon which a person or property may be transported upon a highway. Its operation on or off a highway is absolutely immaterial. Like an automobile a golf car retains its legal status as a motor vehicle while operating on a highway, on private property, or while parked in a private garage. The majority skips over the permissive words "may be used" and superimposes a requirement that a vehicle "must be used upon the highway" and/or "is primarily designed for use upon the highway". By ingrafting those requirements on our statute the prerogative of the legislature is again invaded.

It follows, as a matter of law, that a motorized golf car is a motor vehicle within the contemplation of our guest statute and the statute extends to and covers accidents occurring on private ways and private property, such as a golf course.

For authority the majority cites and relies on a divided opinion of the Wisconsin court in Nelson v. Ohio Casualty Ins. Co., 29 Wis.2d 315, 139 N.W.2d 33, to the effect that our guest statute, being a highway safety measure, does not apply "to a class of motor propelled vehicles so designed that they might never be used for transporting persons or property upon a public highway * * * unless being operated upon a public highway at the time of an accident". The Wisconsin rule arises from the interpretation of insurance contracts and the Wisconsin direct action statute. The vehicles involved in the various cases were a farm tractor, Snorek v. Boyle, 18 Wis.2d 202, 118 N.W.2d 132; a stationary truck upon which a hydraulic crane was mounted, Smedley v. Milwaukee Automobile Ins. Co., 12 Wis.2d 460, 107 N.W.2d 625; and a commercial forklift in Rice v. Gruetzmacher, 27 Wis.2d 46, 133 N.W.2d 401, which was designed to lift and lower heavy items. The relationship between such vehicles and a golf car is remote and far removed. A golf car is expressly and specifically designed to transport persons and property on and off highways. It has no other function or purpose.

Contrary to the Wisconsin rule the Iowa court in Hessler v. Ford, 255 Iowa 1055, 125 N.W.2d 132, 98 A.L.R.2d 539, concluded that a farm tractor was a motor vehicle within the contemplation of their guest statute. See Anno. following this case on the subject "What is 'motor vehicle' within automobile guest statute". 98 A.L.R.2d 543. In Lambert v. Southern Counties Gas Company of Cal., 52 Cal.2d 347, 340 P.2d 608, the California court held, as a matter of law, that plaintiff's bulldozer was a "motor vehicle" subject to the provisions of the Vehicle Code regulating its negligent operation. In response to plaintiff's contention that the bulldozer was being used on private property rather than in the construction of a public roadway at the time of the accident the court said "that fact does not affect the basic definition of a 'motor vehicle' for purposes of application of the Vehicle Code." The California court also recently held a forklift used to lift steel beams was a motor vehicle. Travelers Indemnity Co. v. Transport Indemnity Co., 242 Cal.App.2d 227, 51 Cal.Rptr. 724. The California definition of a motor vehicle is identical to ours.

Unlike many states which narrowly and strictly construe their guest statute in derogation of the common law we have heretofore been committed by SDC 65.0202(1) to liberally construe ours to effectuate its general purpose, Scotvold v. Scotvold, 68 S.D. 53, 298 N.W. 266 and Peterson v. Snell, 80 S.D. 496, 127 N.W.2d 142, which is to abolish or minimize collusive litigation by gratuitous passengers who are generally relatives or friends, Schlim v. Gau, 80 S.D. 403, 125 N.W.2d 174.

The majority opinion can hardly be characterized as a liberal construction of our guest statute. Its coverage is restricted and its purpose deflected. The gratuitous passenger in a golf car is placed in an exalted position of favor. He may ride without compensation and sue for simple negligence. This enviable position is not enjoyed by a hunter, fisherman, or any other social guest in a motor vehicle—on or off the highways of our state. Collusive litigation can arise from a friendly foursome on a golf course as quickly and easily as it can from hunting and fishing companions. In the words of the Ohio court, isn't it just as reprehensible for a gratuitous golf car passenger to sue his host for common law negligence as it would be for a hunter to sue for an accident occurring out in a field, or a fisherman for an accident occurring along the bank of a stream or lake? In my opinion the protective mantle of the guest statute was intended to and does apply in each situation.

The radiating ripples of this opinion will extend far beyond the golf course. Its main burden will fall on the farmer in the operation of his tractors and other farm vehicles which are not used, or primarily designed for use, upon the public highways. He is no longer protected by the guest statute when he gives a neighbor a ride out of the field on his tractor or other farm machinery.

Defendant's negligence, if any, did not constitute willful and wanton misconduct. He affirmatively pleaded the defense of assumption of risk and this defense was included in motions for a directed verdict, in a proposed instruction, and in his application for a new trial. All were denied by the trial court. In my opinion the undisputed facts show, as a matter of law, that plain-

tiff voluntarily assumed the risk of riding on the rounded, molded, slippery hood of a three-wheeled golf car and his conduct constituted contributory negligence as a matter of law.

On the day of the accident plaintiff, defendant, and two other companions were playing golf at the Mitchell Country Club. Defendant was the owner of two Cushman three-wheeled motorized golf cars which he furnished, without compensation, to the foursome. They had played 26 holes when the car in which plaintiff was riding ran out of gas. Defendant then invited plaintiff and the other occupant of the disabled car to put their golf bags on the car he was driving and·to ride on the hood to finish the last hole. Plaintiff and his companion accepted the offer. Plaintiff could have walked this 450 yard hole. Instead he voluntarily elected to ride on the hood of the other golf car knowing it was expressly designed to turn sharply from right to left and knowing it would be so turned on the ride from the tee box to the green. He knew, or should have known, he might be thrown off or might slide off the hood when the car stopped, started, or turned. The foursome hit their tee shots. It may be assumed the tee shots were scattered over the fairway and in the rough. The golf car had to turn and maneuver to find and reach the four different balls. It had to start and stop each time. After the foursome hit their second shots plaintiff again voluntarily assumed the risk of further riding in a place of danger. The car proceeded again toward the scattered balls. There was an iron brace on the car to hold up the top canopy. This could have been used by plaintiff to hang onto. It was readily accessible. Instead he rode on the smooth rounded hood of the car with his hands "probably in his lap" and with no brace for his feet. As the golf car neared plaintiff's ball for the third or fourth shot it turned left and plaintiff slid off breaking his ankle when the cleats of his golf shoe dug into the turf. A clearer case of assumption of risk and contributory negligence can hardly be imagined. At least the defense of assumption of risk should have been submitted to the jury.

In holding there was no error in refusing defendant's requested instruction on assumption of risk the majority opinion states there was no substantial evidence of causal connection between plaintiff's exposed position and the accident. Proxi-

mate cause and causal evidence have never before been essential elements of assumption of risk. That is the difference and distinguishing feature between contributory negligence and assumption of risk. This is elementary. See comment following Assumption of Risk Sec. 13.01 S.D. Pattern Jury Instructions. Furthermore, cases cited by the majority in support of their conclusion in this regard are not in point. The case of Zeigler v. Ryan, 65 S.D. 110, 271 N.W. 767, does not discuss the application of assumption of risk. The case of Stoll v. Wagaman, 73 S.D. 186, 40 N.W.2d 393, involved contributory negligence—not assumption of risk.

A verdict should have been directed for defendant.