TERRACE PARK, INC., Appellant
v.
HARTFORD FIRE INSURANCE COMPANY, Respondent

(170 N.W.2d 467)

(File No. 10633.  Opinion filed August 14, 1969)

**Davenport, Evans, Hurwitz & Smith, Robert C. Heege,** Sioux Falls, for plaintiff and appellant.

**Woods, Fuller, Shultz & Smith, F. M. Smith,** Sioux Falls, for defendant and respondent.

ROBERTS, Judge.

This is an action for declaratory judgment brought by Terrace Park Dairy, plaintiff-appellant, against the Hartford Fire Insurance Company, defendant-respondent, to determine plaintiff's rights and obligations under a contract of insurance between the parties.

Defendant insurer issued to Terrace Park Dairy a policy of insurance which is designated as a "Comprehensive Business Policy" which among other risks insured plaintiff against "legal liability for personal property of others in the actual or constructive custody of the Assured". The policy specifically excluded from such risk "automotive vehicles licensed and desiged for highway use."

Much of the relevant evidence here is undisputed. Harlan K. Stoaks was the owner of a tank truck which he used in transporting milk from the farms of producers to the plaintiff's plant

in Sioux Falls. This was in fact the only use made of the truck. On January 5, 1968, the tank mounted on the truck was damaged by an implosion occurring during the unloading of the milk tank by an employee of the plaintiff while the truck was in the control and custody of the employee. The pump and equipment used in unloading the tank were located inside the plaintiff's plant. The implosion was brought about by the failure of the employee to open the hatch on top of the tank prior to pumping out the milk. A vacuum was thus created causing the tank to collapse.

The milk tank having a capacity of 3350 gallons was installed on the chassis of a Ford truck at the plant of the manufacturer of the tank. It was bolted to the truck chassis and clearance and taillights on the tank were connected to the battery of the truck. The truck was licensed for use on the highways of this state and the owner as a motor carrier paid the prescribed compensation fee based on the total weight of the truck and maximum load and received a permit and compensation plates.

Plaintiff settled the claim of the truck owner after defendant refused to do so and then brought the present action seeking a judgment declaring that the policy of insurance provided coverage and protection against liability for the damage to the tank.

After trial the court made findings and conclusions of law and entered judgment in favor of the defendant and against the plaintiff. The court found that the words "automotive vehicles licensed and designed for highway purposes" in the exclusionary clause of the policy were not ambiguous as to meaning; that the loading and unloading of the tank truck were related to the transportation of milk over highways; that in all its uses the tank was an integral part of the truck; and that the unit at the time of the accident was an "automotive vehicle" within the meaning of the exclusionary clause.

Plaintiff contends that the policy does not purport to exclude liability for damage to personal property when the mobile aspect has ceased and the damaged property is merely attached

to the truck's chassis. Counsel argue that the attachment of the milk tank to the truck chassis did not make it an automotive vehicle. It is conceded that if a unit were being driven on a public highway at a time when damage to the tank mounted on the truck occurred perhaps the conclusion that there was damage to an automotive vehicle would be permissible. In Smedley v. Milwaukee Automobile Insurance Co., 12 Wis.2d 460, 107 N.W.2d 625, relied on by plaintiff, the facts revealed the use of a hydraulic crane which was mounted on a truck chassis. The action was for personal injuries sustained because of negligent operation of the crane. The question before the court was whether the operation and control of the crane constituted the negligent operation, management, or control of a motor vehicle within the meaning of a direct action statute. The statement of facts contains the following description of the crane:

"The hydraulic crane is mounted on a special base on a Mack truck chassis for the purpose of locomotion but when in use the unit is stationary. The crane has its own power separate from the motor of the truck and consists of the hydraulic mechanism for lowering and raising a boom and its line. The boom is some 35 feet long and I beams are lifted by the process of placing a steel cable choker around the beam, fastening the choker to the hook of the line, and raising and swinging the boom. When used for this work the crane is stabilized and made immobile by the use of four outriggers on its platform."

The unit, said the court, would be a motor vehicle when in locomotion for the purpose of transporting the crane, but since the unit at the time of the accident was stationary and the crane was stabilized, supported and rendered immobile by outriggers, plaintiff was injured by the crane and not by negligent operation, management or control of the motor vehicle within the meaning of the statute.

Similar results were arrived at in Norton v. Huisman, 17 Wis.2d 296, 116 N.W.2d 169, and Neumann v. Wisconsin Na-

tural Gas Co., 27 Wis.2d 410, 134 N.W.2d 474. These "separate machine" cases are distinguishable. See Alliance Mutual Casualty Company v. Boston Insurance Company, 196 Kan. 323, 411 P.2d 616. The instant case is not a "separate machine" case. Here the tank was an integral part of the truck. It was not a separate machine having its own power and mounted on a truck only for the specific purpose of lomomotion.

In Nepstad v. Randall, 82 S.D. 615, 152 N.W.2d 383, this court was called upon to consider the applicability of the guest statute, SDCL 1967, § 32-34-1, to an off-the-highway golf cart accident. We held that the words "motor vehicle" within the meaning of the guest statute was not applicable to a class of motor propelled vehicles so designed that they might never be used for transporting persons or property upon a public highway and that a golf cart is not within the terms of the statute unless being operated upon a public highway at the time of an accident. The insurance clause here confronting us expressly excludes an automotive vehicle (designed for highway use". The word "designed" has been defined as "appropriate, fit, prepared, or suitable" and also as "adapted, designated, or intended". 26A C.J.S. Design p. 863. In the Nepstad case it was emphasized that the motor propelled golf cart was a type of vehicle not primarily designed for use upon public highways. The type of motor vehicle here involved is very different. The exclusionary clause contemplates a vehicle constructed and adapted for use on highways. It is immaterial whether an accident upon which a claim of liability is based occurred on or off a highway.

The facts clearly establish that Mr. Stoaks purchased the motor, cab, and, chassis which met certain specifications as to power and to the weight-bearing capacity of the axles and the rear springs. These requirements were intended to provide a truck of sufficient capacity and power to carry the weight of a milk tank and its load, which tank was to be purchased separately and installed by its manufacturer. There is no ambiguity in the policy provisions under consideration and there is no occasion to invoke the familiar rule that equivocal words in an in-

surance contract are to be construed against the insurer. Binder v. General American Life Ins. Co., 66 S.D. 305, 282 N.W. 521. The unit including the milk tank was within the meaning of the exclusionary clause an automobile vehicle licensed and designed for highway use and hence the milk tank was not within the coverage of the policy at the time of the accident.

The judgment is affirmed.

BIEGELMEIER, P. J., and RENTTO, and HOMEYER, JJ., concur.

HANSON, J., concurs specially.

HANSON, Judge (specially concurring).

In Nepstad v. Randall, 82 S.D. 615, 152 N.W.2d 383, a majority of this court applied a "use" theory in holding a motorized golf car specifically designed to transport persons and property was a "motor vehicle" when used on a public highway but it became something else when used off a public highway. It then became, so to speak, a "no-mobile" within the contemplation of our Guest Statute.

As urged by plaintiff, the same reasoning could be applied in the present case to hold the milk tank was not an "automotive vehicle" while unloading on private property. Not having endorsed the "use" theory in Nepstad v. Randall I favor its rejection, rather than an attempted distinction here. Therefore, I concur in the result.