KERR, Appellant, v. STAUFER et al, Respondents.

(217 N. W. 211.)

(File No. 6046. Opinion filed December 28, 1927.)

W. F. *Bruell* and R. M. *Henderson,* both of Redfield, for Appellant.

*Harlan J. Bushfield,* of Miller, for Respondents.

MISER, C. ■ The question that underlies all others in this case is whether the following note is a negotiable instrument, the several parts of which, for convenience in reference, we indicate by letters:

"Vendor's Lien Note.

"San Benito, Tex., June 15, 1920.

(A) "June 11, 1925, after date the undersigned promises to pay to the order of the Texas Delta Farms Company at Kansas City, Mo., in lawful moneys of the United States of America, the sum of $985.93, together with interest thereon from date until maturity at the rate of six per cent per annum, and thereafter until paid at the rate of ten per cent per annum, interest payable annually on the 11th day of June of each year, and further hereby agrees, if this note is not paid when due, to pay all costs of collection and ten per cent of the unpaid principal and interest for attorney's fees. Past-due interest and attorney's fees to draw interest at the rate of ten per cent per annum, and all with annual rests.

(B) "This note is given as part of the purchase price for 34.91 acres of land in Cameron county, Texas, being block 70, Fresnos Land & Irrigation Co.'s subdivision and is more particularly described in a deed of even date herewith given by Interstate Finance Company to the undersigned, in which deed a vendor's lien has been specially and expressly retained and reserved to secure, among other things, the payment of this note.

(C) "The considerations for said conveyance are set forth in the said deed and include the cash payment and the execution and delivery of promissory vendor lien notes of even date with said deed and herewith said notes being numbered or designated, and for the amounts and with the maturities mentioned below.

(D) "If this note or any installment of interest thereon, or any taxes of any nature or description, or any water charges, rents or assessments, hereafter accruing upon or against the above described property, premises or improvements, should not be, or are not, paid when due, then this note and each of the said other notes, may, at the option of the holder, and while any sum or amount may be due thereon, be declared due and payable and forthwith become matured, due and payable, without notice or demand. Reference is specially made to said deed and the record thereof for further particulars.

(E) "Note No.        Consideration.              Due.

| | | |
|---|---|---|
| 1............... | $ 87.45 | June 11, 1923 |
| 2............... | 410.67 | June 11, 1923 |
| 3............... | 87.45 | "John Staufer |
| | | June 11, 1924 |
| 4............... | 410.67 | June 11, 1924 |
| | | "Mary Staufer |
| 5............... | 985.93 | June 11, 1925 |

"[Revenue Stamps]"

The foregoing is a copy of note No. 5, as executed by respondents Staufer. On this and notes numbered 2 and 4, mentioned therein, appellant sued, claiming that each of said notes was, before maturity, in the usual course of business, for a valuable consideration, duly indorsed and transferred by said Texas Delta Farms Company to plaintiff and appellant, who purchased in good faith, without any knowledge of any defense and infirmity thereto. The trial court, in its ruling on evidence and instructions to the jury, which found in favor of respondents, treated said notes as nonnegotiable.

Appellant concedes that, of all the clauses in the note, the one requiring the most careful scrutiny as to its effect upon the negotiability of the note is that clause which we have marked D. But appellant argues that the clause in this note is a mere accelerative

clause, and therefore does not destroy the negotiability of the note. Section 1709, Rev. Code, is as follows:

"An instrument which contains an order or promise to do an act in addition to the payment of money is not negotiable. But the negotiable character of an instrument otherwise negotiable is not affected by a provision which:

"1. Authorizes the sale of collateral securities in case the instrument be not paid at maturity; or,

"2. Gives the holder an election to require something to be done in lieu of payment of money.

"But nothing in this section shall validate any provision or stipulation otherwise illegal."

Section 1709, supra, is identical with section 5 of the Uniform Negotiable Instruments Law, excepting that two subdivisions contained in section 5, Negotiable Instruments Law, are omitted from section 1709, R. C.

In Bright v. Offield, 81 Wash. 442, 143 P. 159, cited in the discussion of the first sentence of section 5 in Brannan's Negotiable Instrument Law (4th Ed.) p. 61, the note sued on contained the following provision:

"And if default be made in the payment of any of said notes so secured, or any part of them, as the same mature, for the space of thirty days, or if the maker of this note and interest notes attached hereto shall allow the taxes or any other public rates and assessments on the mortgaged property, or any part thereof, securing the aforesaid notes, to become deliquent, or shall do any act whereby the value of said mortgaged property shall be impaired, or in case any taxes or assessments shall be levied against the holder of this note, on account of this note, then upon the happening of any of said contingencies, the whole amount herein secured shall at once become due and payable," etc.

Therein the Washington court said:

"Considered only with reference to the time of payment, and without regard to the amount of payment, the provision of this note accelerating maturity on account of nonpayment of taxes, etc., would not render the note nonnegotiable under the rule announced in the Joergenson Case."

But the court continues:

"There is another phase of this condition of the note, however, which makes the undertaking uncertain in the amount to be paid in case of acceleration of maturity by such delinquency of taxes, a condition not presented in the Joergenson Case. Though there is no direct undertaking in the note for the payment of any of these taxes by the maker of the note, there is a necessary implication to that effect. There is a clear and direct provision penalizing him if he does not pay them. * * * Since the amount of these taxes, rates, and assessments is uncertain, the amount of recovery would be uncertain. This provision, therefore, renders the note not merely an unconditional promise to pay a sum certain, but also, in necessary effect, a conditional promise to pay an uncertain sum. The note, by its terms is, in addition to a promise to pay a certain sum of money, a thinly veiled promise to pay the taxes on the mortgaged property. * * * It is equivalent to a promise to pay these charges when due."

■ That reference in a promissory note to mortgages and like instruments securing same is permitted without destroying negotiability is established law. The difficulty arises in determining whether particular language of reference in a note is such as to incorporate in the note the terms and conditions of the instrument referred to. As to the note before us, we do not determine whether the language of clauses B, and C, and E and the closing sentence in clause D is such as to incorporate in the notes the terms and conditions of their companion notes and the instruments referred to. Unless thereby incorporated, there is no positive promise by the makers of the notes that they will pay the taxes, rents, or assessments, in whatsoever amount against the premises purchased. There is, however, a clear and direct provision penalizing them if they do not pay them. As was said in Bright v. Offield, supra:

"The note, by its terms, is, in addition to a promise to pay a certain sum of money, a thinly veiled promise to pay the taxes on the mortgaged property."

Whether or not it might be said, as was said in Bright. v. Offield, supra, that this "is equivalent to a promise to pay these charges when due," certainly the ultimate effect of the language is not greatly different. Moreover, here the makers of this note No. 5 say that, if the interest on it is not paid when due, then the four

other notes "may forthwith become matured, due and payable, without notice or demand." Then, to supplement the references contained in clauses B and C, which, of themselves are fully adequate "to state the transaction which gave rise to the instruments," occurs this closing sentence:

"Reference is specially made to said deed and the record thereof for further particulars."

In Coolidge et al v. Saltmarsh, 96 Wash. 541, 165 P. 509, the note construed in Bright v. Offield, supra, was said to contain "a provision in the note for payment of taxes, which constituted an implied rather than a direct promise by the maker to pay them." Whether the effect of the language in clause D is "the equivalent of a promise" to pay the taxes, water charges, rents, assessments, or the other notes or the interest thereon when due, or whether such language "constitutes an implied promise" to pay them, we are of the opinion that clause D, when read in connection with clauses B and C, constitutes, in effect an undertaking to prevent the happening of the events which would result in the acceleration of the maturity of this note; that this is no mere acceleration clause nor reference to the transaction which gave rise to the instrument, nor does it come within the exception permitted by section 1709, R. C., or by section 1707, R. C., but "contains an order or promise to do an act in addition to the payment of money," and the notes are therefore not negotiable.

■ Although the negotiability of these notes has been determined in favor of respondent, the judgment must nevertheless be reversed. We are of the opinion that prejudicial error was committed in presenting the issues to the jury. No useful purpose will be served in setting forth the pleadings in full. The complaint is in the usual form, alleging the execution and delivery of the notes and their indorsement before maturity, in the usual course of business, to the plaintiff, and purchase by him without any knowledge of any defense or infirmity. The answer might be said to be in the usual form of answer adopted by those who go forth in the unaccustomed luxury of personally conducted excursion trains, ostensibly to look at lands, and find, or think they find, when home again, that they who had set out with the object of getting something for almost nothing had been lavishly entertained by those whose hospitality was largely induced by the same object. They

plead want of consideration, but admit they kept and sold the land; and the proof shows 20 acres of the land to be worth $100 per acre. They plead repudiation, duress, fraud, and misrepresentation, but no rescission. Although appellant justly criticizes the pleading, we are of the opinion, following Coleman v. Valentin, 39 S. D. 323, 164 N. W. 67, that respondents attempted to plead and prove a defense by way of counterclaim for damgaes from the fact that they demand that damages in the full amount of the purchase price of the lands of which the notes in suit are a part be set off by way of recoupment against plaintiff's cause of action. If the jury was satisfied by the evidence that defendants had been damaged, their next duty was to determine the amount of the damage which, pro tanto, would be a defense. This necessitated an instruction as to the true measure of damages; which they did not receive. In view of the fact that a new trial must be had, the answer should be so amended as to fairly advise the trial court of respondent's claimed defense.

Judgment and order denying motion for new trial reversed.

CAMPBELL, P. J., and POLLEY, SHERWOOD, BURCH, and BROWN, JJ., concur.