KNUTSEN, Respondent, v. DILGER, Appellant.

(253 N. W. 459.)

(File No. 7449. Opinion filed March 19, 1934.)

*Max Royhl,* of Huron, for Appellant.

*H. A. Doyle* and *Frank Biegelmeier,* both of Yánkton, for Respondent.

WARREN, J. An action was brought by the mother, Tillie Knutsen, the administratrix of the estate of Thelma Knut-

sen, deceased, for the recovery of damages against Edgar Dilger for the wrongful death of her daughter, Thelma Knutsen. At the close of the testimony, the defendant moved for a directed verdict. The jury returned a verdict for the plaintiff, and defendant moved for judgment notwithstanding the verdict. Both motions were overruled, as was the motion for new trial. Defendant has appealed from the judgment and order overruling the motion for new trial.

The action was closely contested. Objections were frequently made during the progress of the trial, and some thirty-eight assignments are urged for a reversal of the judgment. At the outset in the consideration of the assignments urged, we feel it our duty to state that the space that this opinion would occupy, should be consider each assignment separately, would be too great and the opinion unduly cumbersome; hence we will confine our attention to those we deem vital to our decision.

The facts as disclosed by the evidence are substantially as follows: Appellant, on the 1st day of June, 1931, was traveling eastward on the bottom road west of the city of Yankton, in a six-cylinder 1930 model Chevrolet weighing 2,400 pounds. Said roadster was equipped with disc wheels, the rear wheels being equipped with oversized tires (31x5¼), while the front wheels were stock and carried standard sized tires (29x4.75). At about 9:30 in the evening, when appellant was returning toward Yankton in company with Thelma Knutsen, an unmarried girl about eighteen years of age, the car suddenly became unmanageable. It shimmied, skidded, swerved, and zigzagged, and the appellant seems to have lost control, the car tipping over into the ditch along the highway, instantly killing Miss Knutsen.

There is considerable conflict in the testimony as to the rate of speed the appellant was traveling at the time the car became unmanageable and began to swerve. Testimony was introduced as to statements made by the appellant immediately after the accident as to the rate of speed he was traveling. The various statements submitted to the jury which respondent claims the appellant had made shortly after the accident were to the effect that he was traveling 45 miles per hour, that he looked at the oil gauge, and the next thing he knew he was in the ditch. The appellant, however, contradicts this testimony. In contradicting some of the wit-

nesses, appellant states that he did not recall making such statements, but he did not deny that the same may have been made. He merely testified that he did not remember having made such statements to several witnesses. From the evidence it would seem that at the time of the accident the rear of the car began to swerve from one side of the road to the other, and that the car skidded sidewise on all four wheels for several feet and then turned completely around, with the rear wheels toward the east, moved backward on all four wheels for some distance, left the grade, went down over the north bank and into the ditch, where it turned over and skidded several feet toward the east on its top and side. The point from which the car started to swerve up to the point where it was found in the ditch is a distance of approximately 150 feet. Outside of the appellant there are but two witnesses, namely, Mr. Christensen and his son, Harvey, who attempted to testify as to what occurred, and they were able to testify only as to what they heard and what they afterwards were able to see by artificial light when they arrived at the scene shortly after the car tipped over. Christensen and his son occupy a farm home a short distance from the scene of the accident. They were just going to bed when the father's attention was attracted by an "awful roar" and the sound of a car skidding on gravel. He heard a loud crash, called his son, and they both went immediately to the scene of the accident. Here they talked with the appellant, and they testified that he said that he was going 45 miles an hour, and that Mr. Christensen replied that by the sound and roar of the car he must have been going 90. They testified that the appellant at that time said that the oversized tires were the cause of the accident.

Appellant was twenty-two years of age and was familiar with, and had owned and driven, several automobiles, and had owned this particular car for only ten days or two weeks. The deceased had never owned or driven a car during her life, and there is no evidence to show that she was familiar with the equipment on appellant's car. From the record it appears that the appellant drove west over the bottom road, and, when about 10 or 12 miles from the city of Yankton, turned around and came back east over the same road. There is certain testimony to the effect that, when the car was examined, the emergency brake was found locked in its extreme tension, which would lock the rear wheels. There is

also testimony by witnesses, testifying to facts gained from demonstrations and experience with cars similar to the type appellant was driving, that he was driving 50 miles an hour when the accident occurred.

The deceased had completed the eight grades and was just about to complete her sophomore year in the Yankton high school. Her father and mother lived in the country, where, during the summer months, the deceased helped with the housework and some of the outdoor work. There is testimony to the effect that deceased had earned some money during vacations, which money had been turned over to the family, and also that she worked and earned wages during after school hours and during the holidays in Yankton.

A number of assignments of error are grouped by appellant which treat of, and are designated as "mechanical defects of appellant's car." It is contended by appellant that the car at the time of the accident was in exactly the same condition mechanically and had the same equipment as when it was purchased by the appellant some ten days or two weeks before the accident.

■ There is nothing in the record to indicate that the deceased had been told or that she knew of the oversized tires on appellant's car, or that the car was not functioning properly, although appellant was well aware of these facts. In the case of Petteys v. Leith, 62 S. D. 149, 252 N. W. 18, 20, we held that a guest must accept the vehicle as he finds it, and the duty of the owner or operator extends only to refraining from increasing the danger which the guest assumes upon entering the automobile or from adding any new danger. We further said: "The rule does not extend to concealed defects. An operator owes the duty to a guest to warn him of any known dangerous defect, and a guest does not assume a danger from such defect which is not known to him."

From the evidence, the jury would be at liberty to find that the deceased was not familiar with the lack of control, occasioned by the oversized tires, equipment, and operation of the car, but which facts were known to appellant, who failed to inform the deceased of the fact, and therefore the assumption of risk doctrine would be eliminated.

 The appellant further insists that a guest in entering an automobile takes the car and the driver as they then are and accepts the dangers incident to the mode of conveyance. The appellant in this case and the deceased had, upon a number of occasions, ridden together in automobiles with appellant driving and deceased as his guest, and it would seem that the deceased was familiar with appellant's ability to handle and drive a car. We have, however, said that there is sufficient evidence that the jury might believe that the guest had not been informed of the equipment of the car, and the jury could well draw the inference from the evidence that the deceased had no knowledge that the appellant would drive at a high, reckless, and dangerous rate of speed over so-called rough spots in the road, and that, while going at such high rate of speed, would direct his attention to looking at the oil gauge in such a method and manner that while so doing he would lose control of his automobile. Clearly a guest does not assume responsibility, and is not to be held accountable, for such negligent conduct of the driver while she is occupying the car as a gratuitous guest.

"Huddy's 'Law of Automobiles' (2d Ed.) p. 117, § 18, declares: 'One who voluntarily accepts an invitation to ride as a guest in an automobile does not relinquish his right of protection from personal injury caused by carelessness, and it should be understood by owners of motor vehicles that they assume quite a serious responsibility when they invite others to ride with them,' etc.

"The generally prevailing view on this question is that, where the occupant has no control over the driver, even in a case where the relation of carrier and passenger does not exist, the doctrine of imputed negligence does not apply." Perkins v. Galloway, 194 Ala. 265, 69 So. 875, 876, L. R. A. 1916E, 1190.

██ ██ There is also sufficient evidence in the record to sustain the jury's verdict to the effect that the appellant knew that there was something the matter with the car and that it did not operate properly. There is evidence, if believed by the jury, to the effect that the oversized tires on the rear wheels contributed to the lack of control and improper functioning of the car. Experts testified that a car equipped with tires as much oversized as the rear tires on this particular car would cause the car to sway or zigzag. One of the experts testified that he had never had good control of a car equipped with small tires in front and larger ones

on the rear. There is further testimony that in the opinion of the experts the raising of the rear of the car by virtue of the oversized tires would throw the car out of alignment and that such a car would not steer well. The testimony further shows that appellant had stated to one of the witnesses a few days before the accident that the car when operated swayed quite a little. The testimony shows that the speed of the car was somewhere between 40 and 50 miles per hour and that the appellant looked at his oil gauge.

As to what might happen to this car at the high speed at which it was traveling may best be illustrated by figures as to the distance a car will travel before finally stopping. Testimony by experts showed that the car in question, traveling at the rate of 50 miles per hour, could be stopped at a distance of from 55 to 60 feet by applying the brakes. One can readily understand what could easily happen and where this car would land if appellant, while traveling at a high rate of speed, had his attention attracted by the oil gauge. The jury had a right to take into consideration not only the testimony as to the speed, which was testified to, but also as to the distance the car traveled after it became unmanageable. Morton v. Holscher, 60 S. D. 50, 243 N. W. 89.

The evidence seems to be sufficient to warrant the jury in concluding that the car was mechanically defective, that such fact was known to the appellant, and that the speed at which it was operated was greater than is permitted in the performance of his duty and in the exercise of ordinary care to avoid an injury. What we said as to the duty of one operating an automobile to a gratuitous guest was summed up in Russell v. Crow, 60 S. D. 230, 245 N. W. 249, 250, as follows: "The fact that appellant was a gratuitous guest did not relieve the respondent of the duty of exercising ordinary care to avoid injury. The great weight of authority sustains the rule that the owner of an automobile is liable for injuries through the operation of the car by him to an invited guest if he fails to exercise care reasonably commensurate with the nature and hazard attending such mode of travel in unreasonably exposing the guest to danger or injury by increasing such hazard. Barger et al. v. Chelpon, 60 S. D. 66, 243 N. W. 97; Cleary v. Eckart, 191 Wis. 114, 210 N. W. 267, 51 A. L. R. 576; Benjamin v. Noonan et al, 207 Cal. 279, 277 P. 1045; Bolton v. Wells, 58

N. D. 286, 225 N. W. 791; Avery v. Thompson et al, 117 Me. 120, 103 A. 4, L. R. A. 1918D, 205, Ann. Cas. 1918E, 1122."

■ The rule as to the weight of evidence stated in the above case should also apply in this case: "In Pinches v. New Farmers' Grain Co., 52 S. D. 198, 201, 217 N. W. 190, 191, we said: 'The questions involved in the trial were presented to the jury upon evidence which would sustain a verdict either way, and under such circumstances this court will not disturb the verdict.'" Heidner v. Germscheid, 41 S. D. 430, 171 N. W. 208.

■ The appellant had operated a car for a number of years and understood the construction of automobiles. He was no novice in the art of driving a car. That he was driving rapidly over the road cannot be questioned. There is no evidence that he slackened his speed in the attempt to examine the oil gauge. He must have known that the high speed of the automobile, equipped as it was, would increase the danger, and that whatever he did that would detract his attention, if only for a moment, might cause a serious accident.

■ Appellant predicates error upon the appearance of the state's attorney in the trial of the case. Our attention is called to a number of decisions, to certain sections of our statute, and also to certain canons of ethics. The authorities urged by the appellant do not seem to be in point, as the fact questions therein involved are much different than the facts in the case before us. From the record it appears that the trial court permitted counsel to fully inquire into the appearance of the state's attorney and that after the examination it permitted the state's attorney to assist and counsel as one of counsel for respondent. From the record as presented to us, we fail to see that appellant was prejudiced thereby.

Appellant urges error in the admission in evidence of certain proof, claiming that respondent overemphasized the question of the financial condition of the father of deceased and as to property owned by him. We have examined the record closely and feel that the trial court properly guarded the admission of this evidence, and that the record discloses that no prejudice resulted therefrom, and that the ruling by the trial court pertaining to this evidence and the inferences to be drawn therefrom are well within what this court said in Stratton v. Sioux Falls Traction System, 55 S. D. 464, 473, 226 N. W. 644.

██ We have carefully examined the record pertaining to the rulings of the trial court on admission and rejection of evidence. Some of the rulings are quite close to the border line, yet, when the entire record is considered in the light of fairness to both appellant and respondent, we are unable to say that the rulings complained of constituted prejudicial error warranting a reversal. In this connection we find the assignment of error as to the use of mortality tables. The use of mortality tables has been quite common in our courts for a long period of time. Our own court in Whaley et al v. Vidal et al, 27 S. D. 642, 132 N. W. 248, 252, said: "We are of the opinion, therefore, that the court committed no error in admitting this work (American Tables of Mortality) in evidence and that no special foundation is required to be laid for its introduction."

As to the court's instruction relating to mortality tables, a number of cases have been compiled and will be found in note b, 87 A. L. R. 929 et seq.

It would seem that the modern trend of judicial decisions is toward using standard mortality tables in judicial proceedings to aid in determining the probable duration of human life. As to courts' taking judicial notice of standard mortality tables, see Southern Pac. Co. v. De Valle Da Costa, 190 F. 689, 111 C. C. A. 417; Louisville & N. R. Co. v. Mothershed, 97 Ala. 261, 12 So. 714; Pittsburg, C., C. & St. L. R. Co. v. Sudhoff, 173 Ind. 314, 90 N. E. 467; Mug v. Ostendorf, 49 Ind. App. 71, 96 N. E. 780; Timson v. Manufacturers Coal & Coke Co., 220 Mo. 580, 119 S. W. 565.

Appellant argues that a new trial should be granted on account of misconduct of the jury preliminary to arriving at a verdict and submitted an affidavit which he claims shows and establishes clearly that the verdict of the jury was a quotient verdict within the definition of section 2555, subd. 2, Rev. Code 1919. The respondent in opposition to appellant's affidavits procured affidavits and the sworn statements of the jurors who considered the case to the effect that no such agreement was made or entered into. Without reviewing the record at length as to matters shown in behalf of appellant by way of an affidavit and the matters in the resistance shown by affidavits in behalf of respondent, it clearly falls within State v. Corner et al, 58 S. D. 579, 237 N. W. 912,

914, wherein we said: "In the case at bar, we have four jurors' and appellant's affidavits stating to the effect that it was a compromise verdict; opposed we have the affidavits of four jurymen that their opinion was based fully and solely upon the evidence given from the stand and under the instruction of the court. Opposed, in addition to the affidavits submitted in behalf of the state, and opposed to the statements of appellant is the presumption indulged in by the court that the jurymen have performed their duty fairly and impartially. The learned circuit court which tried the case was necessarily familiar with the facts in the case; he found against the appellant, and under the records as here presented, we cannot say that the court's ruling upon the motion for a new trial and the court's findings are not sustained by the evidence."

 Appellant's requested instructions and his objections to certain of the court's instructions have been carefully examined, and we feel that the charge which the court gave to the jury covered the law applicable to the facts, and was fair, and that the requested instructions to which the appellant was entitled were embodied in substance in the charge given by the court. The requested instructions concerning contributory negligence of the deceased were not properly framed to fit the facts in the record, and did not correctly state the law. We must adhere to what we said in Aaker v. Quissell, 60 S. D. 513, 244 N. W. 889, 890. Therein we said "To entitle a party to a particular instruction, it must not only correctly state the law, but it must be responsive to the issues in the case."

All of the requested instructions we feel are subject to what was just quoted or were given in substance by the trial court.

 Appellant complains that the verdict of $7,750 was excessive, but, after a careful consideration, we have reached the conclusion that the verdict is not excessive. This girl was normal, healthy, and intelligent. She had obtained two years of high school education. During vacations and at the times when she was not attending school she assisted with the housework at home and also some outside work. The jury was warranted in returning such a verdict, and could reasonably infer that deceased would have been of substantial aid to her parents, and that her services would have been of sufficient value when reduced to present value to amount to the sum awarded. Much must be left to the fair and

484

intelligent judgment of the trial jury, as there is no exact standard by which damages in this sort of case can be measured. Hughey et al v. Lennox, 142 Ark. 593, 219 S. W. 323.

Other assignments of error which have not been specifically treated or referred to in this opinion have been considered, and it is our view that they are not prejudicial and could not in any event change the result.

The judgment and order appealed from are affirmed.

ROBERTS, P. J., and POLLEY and RUDOLPH, JJ., concur.

CAMPBELL, J., concurs in result.