MILLER et ux., Respondents v. BAKEN PARK, INC., Appellant

(175 N.W.2d 605)

(File Nos. 10569, 10586. Opinion filed March 6, 1970)

**Hanley, Wallahan, Driscoll & Murray,** Rapid City, **Costello, Porter, Hill, Banks & Nelson,** Rapid City, for plaintiffs.

**Bangs, McCullen, Butler, Foye & Simmons,** Rapid City, for defendant.

BIEGELMEIER, Judge.

## No. 10586

A pickup truck, of which Donald Miller was the driver and his wife Elaine a passenger, collided with a tree located in what plaintiffs call a driveway and defendant an auxiliary parking lot. Both received injuries for which this action for damages resulted. Defendant, Baken Park, Inc., owns and controls the premises known as Baken Park Shopping Center, bounded on the south by Canyon Lake Drive, the north by West Main, the east by Mt. View Road and the west by Rapid Creek. A large building centrally located on the premises houses numerous businesses in spaces leased from defendant. To the east of the building is a large customer parking area and to the west an auxiliary parking area. They are hard-surfaced. There are entrances to business places on both lots. Hoke's Drive-In, a lessee of defendant, is located in a separate building on the northwest corner of the Center near West Main and Rapid Creek and some distance from the northwest corner of the large building. While cars parked west of the large building and in the area around the Drive-In, it appears there was space for customers of the Shopping Center's lessees, including the Drive-In, to drive cars to use the lot for parking and also in a north and

south direction either from West Main on the north to Canyon Lake Drive on the south or vice versa. The evidence is that they and the general public did so and defendant's officers were aware of it.

Between 9 and 10 p. m. the Millers, residents of Draper, South Dakota, left their cabin near Rapid City to go to Hoke's Drive-In to buy some food. Mr. Miller drove the pickup and parked it while they made their purchase. They had entered the Shopping Center from West Main, the street on the north side of the Center and Drive-In and to which the latter was adjacent, but in leaving it Miller drove south along the large building intending to reach Canyon Lake Drive, the street on the south side of the Center. They had never travelled over this area before but had observed others doing so. It was a misty, gloomy night with wind and gusty rain; the windshield wipers were working and headlights turned on dim. Mrs. Miller testified, after driving south some 500 feet or more and at about the same time that Mr. Miller shifted from low to second gear that

"all of a sudden this tree was right in front of us. It was just black and dark, just like the rest. There was no outline at all. * * * Just the moment it was in the range of the headlights we saw it and we were just into it immediately."

Mr. Miller testified that while his lights had been adjusted by an official light adjuster he was unable to see the tree when it first came into the range of his headlights because of the "Black asphalt" and "everything was black, the tree trunk blended with the night" and he was not able to observe the tree until it was almost right in front of him. A lessee familiar with the tree testified a person driving south would have to swerve to avoid it. Another witness also familiar with it testified he drove south this same night and it was hard to see the tree because of reflecting lights on the wet pavement; another witness testified similarly. The testimony as to speed by plaintiffs' pickup varied from 15 to 35 miles per hour. Pictures taken that night

and later and plats of the area were introduced in evidence. The tree, with a trunk of about eight inches and branches trimmed to eight or ten feet above the ground, permitted a view of cross traffic ahead driving on Canyon Lake Drive. The exhibits show the distance from the Drive-In to the tree to be 610 feet and the width of the hard-surfaced area to the west of the large building to run from about 180 feet at the north end near the Drive-In angling on the west side down to about 70 feet on the south end at Canyon Lake Drive; this resulted because the bed of Rapid Creek curved to the east. A row of six light poles ran parallel to the south side of the large building, the north four nearest the Drive-In being 70 feet south; the two just beyond the accident scene narrowed this distance to 60 feet. The lights had been turned off as usual at 10 p. m. The evidence showed cars sometimes parked in marked spaces along the building and a bakery truck, always parked along the building at night, occupied part of the space ahead as a person drove south. The tree struck by the pickup was 23 feet east of the row of light poles; it left 27 feet east of the tree open for passage south as a car was parked along the building and 37 feet if it was not. On the angling west side of this parking lot and quite some distance west of the light poles trees line Rapid Creek. The evidence showed fresh bark was stripped from the tree as a result of the impact, but also showed old scars on the tree at heights of car bumpers indicative of past injuries to it. The trial court submitted the controversy to a jury under instructions as to defendant's negligence, contributory negligence and other issues it deemed appropriate. The jury returned a verdict for defendant and plaintiffs appeal.

I.

Without further detailing the evidence we believe it was sufficient for a jury to find defendant was negligent in allowing one tree without reflectors or other warning devices to remain in an area which not only served as a parking lot for customers of its lessees but in the area used by them as a driveway. There was no dispute that plaintiffs were customers of Hoke's Drive-In and therefore its business invitees. Defendant

constructed its Shopping Center and maintained control of its parking lots and driveway thereon for the express purpose of serving the customers of its lessees. That was its intent and purpose and the business invitees of its lessees were its business invitees, and owed them the same duty to keep the premises in a reasonably safe condition. Bruno v. Pendleton Realty Co., 240 S.C. 46, 124 S.E.2d 580, 95 A.L.R.2d 1333; Nicholas v. Tri-State Fair & Sales Ass'n, 82 S.D. 450, 148 N.W.2d 183. Plaintiffs were in a place provided for their use and were using it for the purposes for which it had been provided and there was an implied representation it was reasonably safe. Orrison v. City of Rapid City, 76 S.D. 145, 74 N.W.2d 489. Plaintiffs' inability to see the tree here is comparable to plaintiff's inability to see in Orrison.

## II.

We first consider the claims of error as to plaintiff Elaine Miller. It is asserted on her behalf that the court erred in refusing to give proposed Instruction 19 to the effect that if the jury found her husband Donald Miller was negligent that such negligence could not be imputed or attributed to his wife Elaine and a related proposed Instruction 35 that the negligence, if any, of Donald Miller was not a defense of defendant Baken Park if it was concurrently causatively negligent.

It is settled law in this state that in the absence of some control or authority over the operation of the car by the wife, the negligence of the husband in driving the car is not imputable to his wife who is riding with him as a passenger and will not prevent her from recovering against a third person for injuries sustained by reason of the concurring negligence of her husband and such third person. Lapp v. J. Lauesen & Co., 67 S.D. 411, 293 N.W. 536. See also Pemberton v. Fritts, 56 S.D. 374, 228 N.W. 409; Hanisch v. Body, 77 S.D. 265, 90 N.W.2d 924; and Schoenrock v. City of Sisseton, 78 S.D. 419, 103 N.W.2d 649. North Dakota has adopted a similar view by holding negligence on the part of the driver of a vehicle cannot be imputed to a passenger riding with him. Kelmis v. Cardinal Petroleum

Company, 1968, N.D., 156 N.W.2d 710. On this premise, the federal court in Emery v. Northern Pacific Railroad Co., 1969, 8 Cir., 407 F.2d 109, wrote "plaintiff was clearly entitled to an instruction that the driver Bigelow's negligence was not to be imputed to" the passenger and reversed the judgment entered on a jury verdict for defendant for refusal of the trial court to give it. To the same effect is Van Noy v. Frank, 1935, 10 Cal. App.2d 423, 51 P.2d 1166, where the court calls it a "fatal omission". See also California Jury Instructions, BAJI (5th Ed.) No. 3.70; Ross v. Wilcox, 190 Cal.App.2d 213, 11 Cal.Rptr. 588, the cases cited in the Emery opinion and to No. 72.03 Illinois Pattern Jury Instructions.

■ Defendant contended in the trial court and mentions it here that the husband's negligence should be imputed to his wife citing Flanagan v. Slattery, 74 S.D. 92, 49 N.W.2d 27, on the theory the husband was the agent of his wife in obtaining food for them. There is no evidence of principal and agent, master and servant, joint enterprise or exercise of control over the driver by the wife. Schoenrock v. City of Sisseton, 78 S.D. 419, 103 N.W.2d 649; Ross v. Wilcox, supra. Without laboring the point we reject that contention here where the husband and wife together were engaged in patronizing a Drive-In. Defendant argues that in several instructions the court limited the claims and duties of the parties separately and thus, in effect, gave the jury the nonimputation guideline. However, the instructions use terms plaintiff and plaintiffs interchangeably and in two or three specifically refer to Donald Miller and Elaine Miller, which the jury could easily misconstrue. We conclude that nothing less than giving the jury in effect proposed Instruction 19 will comply with our cited opinions. They were not cautionary as defendant suggests but declarations of the rights of parties. We agree with the court in Ross v. Wilcox, supra, where it wrote "It seems clear to us that the failure of the trial court to instruct on a legal question of such importance, as applied to the facts of the instant case, is prejudicial error."

■ Proposed Instruction 35 as to concurrent negligence is supported in principle by Rowan v. Becker, 73 S.D. 273, 41

N.W.2d 836, and Schoenrock v. City of Sisseton, supra, and may have properly been given to clarify that issue. See S.D. Pattern Jury Instructions 12.04. It is unnecessary to determine whether it alone was error to refuse it as refusing No. 19 was clearly erroneous. Refusal to give a requested instruction setting forth law applicable thereto is not only error but prejudicial error. Tufty v. Sioux Transit Co., 69 S.D. 368, 10 N.W.2d 767; Kerr v. Staufer, 52 S.D. 223, 217 N.W. 211. This requires reversal of the judgment as to Elaine Miller.

## III.

■■ In a new trial her status as an invitee will be involved. The trial court gave instruction as to "public invitees" and "business invitees"; it advised the jury defendant's invitation only extended to the time and manner reasonably expected in connection with the invitation extended at the time and that defendant was liable only to that extent. The effect of the several instructions on this point allowed the jury to find plaintiffs had exceeded their invitation as to use and find against them as invitees. It is without dispute plaintiffs were business invitees and the question as to their status as such should not have been submitted to the jury. The trial court should present only those issues which find support in the evidence. Orrison v. City of Rapid City, supra.

## IV.

■■ Plaintiff Elaine Miller also claims the trial court erred in submitting the question of her contributory negligence and assumption of risk. Although there is authority for confining the doctrine of assumption of risk to cases arising out of the relation of master and servant, or to cases involving a contract relationship, it is now fairly well settled that this defense may exist independently of the master and servant relation. 38 Am.Jur., Negligence, § 171. The Minnesota court has said in other than master and servant cases, it is but a phase of contributory negligence. Peyla v. Duluth M. & I. Range R. Co., 218 Minn. 196, 15 N.W.2d 518, 154 A.L.R. 505. Our court has

said these defenses are closely associated, Orrison v. City of Rapid City, supra, where it then wrote:

> " 'Assumption of risk constitutes a defense when one enters on the known unsafe premises of another having no right to do so save that derived from the owner's consent, but does not constitute a defense as to one to whom the owner is under a duty to maintain the premises in a safe condition where the owner's failure to do so has created a situation in which it is reasonably necessary to undergo a risk in order to protect a right.' "

This court has had occasion to consider the doctrine involving the master and servant relationship in Schmeling v. Jorgensen, 77 S.D. 8, 84 N.W.2d 558; Bartlett v. Gregg, 77 S.D. 406, 92 N.W.2d 654, and Platt v. Meier, 83 S.D. 10, 153 N.W.2d 404. Before it can be said Mrs. Miller voluntarily assumed the risk of negligence of her husband "it must be established that the risk and danger therefrom [were] obvious, or that (she) plaintiff know of the risk and its danger." Schmeling v. Jorgsensen, supra. While plaintiffs had driven on West Main and Canyon Lake Drive neither had ever driven or been on the west parking lot and had no knowledge and were not chargeable with knowledge of the tree as they started away from the Drive-In. Both for the reason Mrs. Miller had no knowledge of the danger required under Schmeling and defendant had a duty to maintain his premises under Orrison, assumption of risk was no defense to the action by Mrs. Miller and the instruction should not have been given as to her.

■ The duty of Mrs. Miller as a passenger (and resulting claim of contributory negligence as to her by defendant) is different from that of the driver and is delineated in Hanisch v. Body, and Schoenrock v. City of Sisseton, both supra. While questions of negligence and contributory negligence are usually questions for a jury, Northwestern Bell Tel. Co. v. Henry Carlson Co., 83 S.D. 664, 165 N.W.2d 346, under the circumstances here the record does not warrant submitting the issue of contributory negligence of Mrs. Miller to the jury. Schoenrock v. City of Sisseton, supra.

The evidence does support submitting the issue of contributory negligence to the jury as to Mr. Miller; it does not support the giving of the assumption of risk instruction as to Mr. Miller.

## V.

Plaintiff husband drove into the Drive-In from West Main, but parked on the southeast corner while making his purchase. Instead of driving back north to West Main, he drove south over the blacktop area to reach Canyon Lake Drive. During the trial defendant made much of the fact that plaintiff Donald Miller drove in this direction and his wife made no objection to it. The trial court instructed the jury as follows:

> "You are instructed that a person to whom two courses of conduct are open is required to exercise ordinary care in choosing which course he will pursue. If, under the same or similar circumstances, an ordinarily prudent person would not have so chosen, one having a choice is negligent in pursuing a course which is dangerous rather than one which is safe or less dangerous. This is true, even though the course pursued is easier or more convenient, and even though the risk of injury from the course pursued is not so great that an ordinarily prudent person would not have chosen it if the safer course had been unavailable. In this connection, if you find that plaintiff, Donald Miller, had a safer course of travel open to him, but chose a more dangerous course which would not have been chosen by an ordinarily prudent person under the same or similar circumstances, then he was guilty of contributory negligence in choosing the course of travel which he did."

The instruction entirely omits the requirement that plaintiff driver know and appreciate, or in the exercise of ordinary care should have known or appreciated the added risk. In 65A C.J.S. Negligence § 122 at page 77, it is stated:

"In order that one may be guilty of contributory negligence in selecting the hazardous course, it must appear that he knew and appreciated, or in the exercise of ordinary care should have known and appreciated, that the course chosen was not unlikely to result in his injury."

On this subject the court, in Well v. Moran Bros. Co., 55 Wash. 102, 104 P. 172, wrote:

"It is the appellants' contention that the respondent was guilty of contributory negligence in that he had a choice of ways equally available to him by which to reach the upper deck of the vessel, only one of which was dangerous, and that he voluntarily chose the dangerous way. (Citing cases in support) * * * But these cases are all based on the assumption that the servant has knowledge of the conditions surrounding his work, and chooses the dangerous way".

In Young v. Baldwin, 8 Cir., 84 F.2d 841, the defendant claimed plaintiff guilty of contributory negligence because a

" 'safe route had been provided * * * and if she had followed it she would not have been injured.' * * * But contributory negligence of the injured party is not always established by pointing out that he might have used a safe instead of a dangerous way; it must be shown, also, by him who has the burden, that the injured party was charged with knowledge of the surrounding circumstances and chose the dangerous way with the extra hazard in view. (Citations) The evidence in this case fails to show that plaintiff knew * * * the way she undertook to cross was dangerous. It does not appear that she knew of the presence of the intervening railroad track between where she alighted and the station".

 As has been noted under the discussion of assumption of risk this instruction to which it is somewhat akin, should not have been given. Plaintiff Donald Miller had no knowledge of the tree or any danger or that it was a "more dangerous course" to travel. They had seen many others drive on it and exit on both ends of it and the testimony of several witnesses including the president of defendant testified that it was commonly so used. He had a right to use the lot and drive from it in the direction he did subject to consideration of his acts at the scene of the accident.

Because a new trial must be had the opinion has dealt with questions argued that will arise there.

### No. 10569

### VI.

To plaintiffs' action for damages defendant served a counterclaim against plaintiff Donald Miller alleging the accident and injuries to his wife were caused by his negligence while she was a passenger in a motor vehicle driven by him, and seeking contribution from him of the whole or a proportionate share of any judgment obtained against defendant by plaintiff Elaine Miller. Donald Miller's reply included a motion to dismiss the counterclaim for the reason it failed to state a claim upon which relief could be granted. The court granted the motion at a pretrial hearing. It was stipulated (1) the accident occurred on private property owned by defendant; (2) no compensation was paid by plaintiff Elaine Miller for the transportation in question within the meaning of the term "compensation" as used in the guest statute; and (3) that the pickup truck operated by plaintiff Donald Miller was a "motor vehicle" within the meaning of that term as used in the guest statute. SDCL 1967, § 32-34-1, formerly SDC 44.0362.

**"Guest statute—Willful and wanton misconduct required.**—No person transported by the owner or oper-

ator of a motor vehicle as his guest without compensation for such transportation shall have cause of action for damages against such owner or operator for injury, death, or loss, in case of accident, unless such accident shall have been caused by the willful and wanton misconduct of the owner or operator of such motor vehicle, and unless such willful and wanton misconduct contributed to the injury, death, or loss for which the action is brought."

The question presented is whether this statute applies to an action for damages resulting from injuries received from the operation of a motor vehicle on privately owned property.

If it does apply defendant seems to concede the trial court was correct in dismissing its counterclaim as indeed it must in view of Burmeister v. Youngstrom, 81 S.D. 578, 139 N.W.2d 226, where action was brought by the administrator of a passenger against the owner and driver of the other car involved in a collision. Defendants attempted to make claim against the driver of the car in which plaintiff's intestate was riding for all sums they may be held liable for the passenger's death. There, as here, no allegation was made of wilful or wanton misconduct by the driver and no contention made the passenger would have a cause of action against the driver. After consideration of the Uniform Contribution Among Tortfeasors Law, now SDCL 15-8-11 through 15-8-22, the court held the right of contribution was a derivative right and there can be no contribution where the injured person (here Mrs. Miller) has no right of action against the third person (here Mr. Miller).

Did the fact this motor vehicle, a pickup truck, was being operated on private property and not on a public highway take it out of the application of the guest statute?

The court had occasion to determine whether a three-wheeled golf car propelled by a gasoline motor was a "motor vehicle" within the meaning of our guest statute while being operated on a private golf course and held it was not. Nepstad v.

Randall, 82 S.D. 615, 152 N.W.2d 383. While the opinion mentions and discusses several regulatory statutes governing the use of vehicles upon a public highway, the court's decision was that the "language in question refers to the type or class of self propelled vehicles **primarily** designed for transportation of persons or property on public highways." (Emphasis supplied.)

In reaching that conclusion the court wrote that it agreed with what was said in Nelson v. Ohio Casualty Insurance Co., 29 Wis.2d 315, 139 N.W.2d 33,

"to the effect that a highway safety statute was not applicable to a class of motor propelled vehicles so designed that they might never be used for transporting persons or property upon a public highway and that such a motor vehicle is not within the terms of the statute unless being operated upon a public highway at the time of an accident."

Since the filing of briefs in this appeal the court has decided Terrace Park, Inc. v. Hartford Fire Insurance Co., August 14, 1969, 84 S.D. 259, 170 N.W.2d 467, which involved determination whether a Ford truck chassis with a large milk tank bolted thereto, licensed and used for transporting milk over the public highways from farms to plaintiff's plant was within the terms of an insurance policy which excluded "'automotive vehicles licensed and designed for highway purposes'" while the tank was being unloaded on private property. The court held it did come within the exclusion stated as it was a motor vehicle constructed and designed for use on highways.

Defendant argues that some statements appearing in the majority opinion in Nepstad v. Randall, supra, while dictum, indicate that all of the provisions of Chapter 44.03 of the South Dakota Code of 1939 apply only to the use of motor vehicles upon public highways and not while being driven upon private property; that as that chapter then included the guest statute, SDC 44.0362, it is not applicable to the defendant's counterclaim.

It is unnecessary for us to reexamine the public highway references made in Nepstad or its application here for this appeal involves a motor vehicle, a pickup truck, constructed and adapted for use upon the public highways, as much so, at least, as that involved in the Terrace Park appeal. There the court said it was immaterial whether the accident occurred on or off the highway. That, incidentally, also was the determination of the Wisconsin Court, Nelson v. Ohio Casualty Insurance Co., cited supra.

The Order dismissing defendant's counterclaim in #10569 is affirmed and the judgment in #10586 is reversed.

ROBERTS, P. J., and RENTTO and HOMEYER, JJ., concur.

HANSON, J., dissents.