Gladys H. JAHNIG, Special Administrator of the Estate of Bernie L. Jahnig, Deceased, Plaintiff and Appellant,

v.

Eileen COISMAN and Don Coisman, d/b/a the Ipswich Motel, IPSWICH Co-Operative Assoc., a co-operative corporation, and Coleman Company, Inc., Defendants and Respondents.

No. 12390.

Supreme Court of South Dakota.

Argued May 15, 1979.

Decided Sept. 26, 1979.

Rehearing Denied Oct. 22, 1979.

Thomas M. Tobin of Maynes, Tonner, Maynes & Tobin, Aberdeen, for plaintiff and appellant Jahnig.

Joseph H. Barnett of Siegel, Barnett, Schutz, O'Keefe, Jewett & King, Aberdeen, for defendants and respondents Coismans.

Chester A. Groseclose, Jr. of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for defendant and respondent Ipswich Co-operative Assoc.

Francis M. Smith of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendants and respondents Coleman Co., Inc.

FOSHEIM, Justice.

This wrongful death action was brought by Gladys H. Jahnig, as Special Administrator of the Estate of Bernie L. Jahnig, against defendants Eileen Coisman and Don Coisman, doing business as The Ipswich Motel (Coisman); Ipswich Co-Operative Association (Ipswich Co-op); and Coleman Company, Inc. (Coleman).

The complaint alleged causes of action for negligence against defendants Coisman, Ipswich Co-op, and Coleman; causes of action for breach of implied warranty against Coisman and Coleman; and a cause of action based upon strict liability against Coleman.

An Edmunds County jury returned a verdict for all defendants and against plaintiff.

This appeal from the judgment entered presents the following issues:

(1) Whether refusal of plaintiff's requested instruction on strict liability with respect to defendant Coleman was reversible error.

(2) Whether denial of plaintiff's motion to suppress evidence relating to insurance proceeds received by decedent's parents was prejudicial error.

We reverse as to (1) and affirm as to (2).

On January 23, 1975, Bernie Jahnig paid the appropriate rate and checked into a small sleeping room at the Ipswich Motel. The room was heated by a Coleman wall furnace (Model 2301), which was attached to an inside wall and vented straight up through the ceiling and roof.

On January 25, 1972, Bernie Jahnig was found dead in his room. The Edmunds County Sheriff and Deputy, who conducted an investigation, noticed fine particles of soot about the deceased's nostrils and mouth, and on the walls and around the wall furnace. They also detected the smell of gas in the room. Prior to Bernie Jahnig's stay in this room, the walls and furnace were not covered with soot. An autopsy revealed that Mr. Jahnig died of carbon monoxide poisoning.

This wall furnace was manufactured by Coleman and put into the stream of commerce in 1957. Each Coleman wall furnace came individually packaged along with installation and operation instructions supplied by Coleman. Coleman shipped the units aware that they were to be installed by someone other than itself and for that reason included the instructions. This particular furnace was purchased from a Coleman distributor and functioned without difficulty from the time of installation in 1957 to the date of this unfortunate occurrence. The Coleman wall furnace in the deceased's motel room was not altered in any way and apparently reached the ultimate user without any substantial change in condition.

These furnaces require proper venting. According to plaintiff's witnesses, the carbon monoxide poison was produced by a

malfunction of the venting system due to improper installation. Coleman was not involved in the manufacture or sale of the venting system. However, at the time this unit was manufactured and put into the stream of commerce, Coleman knew that it was designed to utilize room air for combustion and that it required the flue gases to be vented to the outside through a roof vent. The unit was designed to circulate a large volume of air which was drawn from the lower level and then passed on through the furnace. The evidence shows that if LP gas is burned with an inadequate air supply, it produces carbon monoxide. The length of the vent from the burner in a Coleman furnace is crucial to the successful exhaust of combustion gases to the outside. There is evidence that Coleman knew at the time of manufacture that the amount of air to the furnace was crucial in maintaining a clean burn and that lint and dust collecting in the air intake would prohibit the proper burning of the LP gas and produce carbon monoxide. Coleman provided no warning of the consequences of providing less gas pressure than that which was required by the furnace design, nor did they warn of the danger of inadequate air or of the consequences of failure to adequately vent the furnace to the outside.

Plaintiff claimed the product was defective within the scope of both negligence and strict liability because Coleman failed to adequately warn: (1) against use of the Model 2301 heater in a sleeping room of the size here involved; (2) of the dangerous condition which would likely result if the air flow to the burner was restricted; (3) of the necessity for proper maintenance; and (4) of the necessity for installation of a proper venting system. At the conclusion of all the evidence, the defendant Coleman moved for a directed verdict against the plaintiff on all issues, including strict liability. That motion was denied.

Plaintiff requested Instruction No. 5 on strict liability and No. 6 on failure to warn.

Instruction No. 5 was refused. Counsel then asked for additional time in which to prepare an instruction conforming to Pattern Jury Instruction No. 150.29. Apparently to avoid delay, the following record was made by court and counsel: [1]

THE COURT: So that your record may be complete before the Supreme Court, may it be agreed that the Court may consider this Instruction as though it had been offered in proper form, and the Court sustained the objection, and refused to give the Instruction, but attempted to preserve for Mr. Maynes any rights that he might have upon appeal? Would that be agreeable to the defendant Coleman?

MR. SMITH: Yes, Your Honor. I have no desire to put Mr. Maynes in a position where he doesn't have his record. I would agree that his proposed Instruction would follow the form, to which the Court has referred, properly modified to adapt itself.

MR. MAYNES: And that the Court now considers that construction in that Instruction in denying the same, the same as though it were offered in correct form?

THE COURT: That is the Court's intent. The Court's intent is to preserve for you and your client a proper record before the Supreme Court, so that if there is error in the Court's sustaining this objection that the Court may consider this matter. And, for that purpose, there has been consent by the defendant Coleman. Is there any objection by anyone else to the handling of this matter in this way?

(No response)

THE COURT: The record may show that there is none. Does the plaintiff have further requested Instructions?

MR. MAYNES: Well, plaintiff's requested Instruction No. 6 goes to the

---

1. This portion of the record is significant because it dispenses with the need to decide whether the requested instruction correctly stated the applicable law as required by *Knut-* *sen v. Dilger*, 62 S.D. 474, 253 N.W. 459 (1934) and *Grant v. Whorton*, 28 S.D. 599, 134 N.W. 803 (1912).

warning necessary to be given in a strict liability type of a claim so, therefore, I think with the denial of Instruction No. 5, we will withdraw No. 6.

Appellant claims if the evidence was sufficient to warrant a denial of Coleman's motion for a directed verdict as to strict liability, then it necessarily follows that the requested instruction on that issue should have been given.

## I

The trial court has a duty to instruct the jury on applicable law where the theory is supported by competent evidence. *Egan v. Sheffer*, 86 S.D. 684, 201 N.W.2d 174 (1972); *Zakrzewski v. Hyronimus*, 81 S.D. 428, 136 N.W.2d 572 (1965). Refusal to give a requested instruction setting forth applicable law is not only error, but prejudicial error. *Miller v. Baken Park, Inc.*, 84 S.D. 624, 175 N.W.2d 605 (1970); *Tufty v. Sioux Transit Co.*, 69 S.D. 368, 10 N.W.2d 767 (1943); *Kerr v. Staufer*, 52 S.D. 223, 217 N.W. 211 (1927). It is not error, however, to refuse to amplify instructions given which substantially cover the principle embodied in the requested instruction. *Egan v. Sheffer*, supra; *Jorgenson v. Dronebarger*, 82 S.D. 213, 143 N.W.2d 869 (1966); *Peters v. Hoisington*, 72 S.D. 542, 37 N.W.2d 410 (1949). Instructions are adequate when, considered as a whole, they give a full and correct statement of the applicable law. *Mueller v. Mueller*, 88 S.D. 446, 221 N.W.2d 39 (1974); *Dwyer v. Christensen*, 77 S.D. 381, 92 N.W.2d 199 (1958).

In products liability suits based upon strict liability, a product is defective when it fails to perform the function for which it was intended. No specific defect need be shown if the evidence, direct or circumstantial, permits the inference that the injury was caused by a defect. *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251 (S.D. 1976). Further, the product itself need not be defective. Where a manufacturer or seller has reason to anticipate that danger may result from a particular use of his product, and he fails to give adequate warning of such a danger, the product sold without such warning is in a defective condition within the strict liability doctrine. *Midgley v. S. S. Kresge Co.*, 55 Cal.App.3d 67, 127 Cal.Rptr. 217 (1976); Restatement (Second) of Torts § 402A, Comment h (1965). See generally: 63 Am.Jur.2d Products Liability § 131 (1972); Annot., 13 A.L.R.3d 1078 (1967). Coleman concedes that under the general rule lack of appropriate warning can make a product defective within the doctrine of strict liability, but argues that if there was a submissible issue as to breach of duty by Coleman to warn, Instructions 20 and 25 nevertheless adequately stated the applicable law.[2]

In a products liability action based on negligence, the proof must show that the manufacturer or seller failed to exercise reasonable care to inform those expected to use the product of its condition or of the facts which make it likely to be dangerous. Restatement (Second) of Torts § 388 (1965); *Dougherty v. Hooker Chemical Corp.*, 540 F.2d 174, 177 (3rd Cir. 1976). See generally: 63 Am.Jur.2d Products Liability § 42 (1972). Strict liability in products liability cases, on the other hand, relieves the plaintiff of the burden of proving negligence by the manufacturer. *Engberg v. Ford Motor Co.*, 87 S.D. 196, 205 N.W.2d 104 (1973); Restatement (Second) of Torts § 402A, Comment a[3], and deprives the defendant of

**2.** Instruction No. 20:

A manufacturer of a product which he knows, or by the exercise of ordinary care should know, is potentially dangerous to users thereof, has a duty to give adequate warning of such danger where injury to a user thereof can be reasonably anticipated if an adequate warning is not given. Failure to so warn constitutes negligence.

Instruction No. 25:

When the expression "proximate cause" is used, it means that cause which is an imme-

diate cause and which, in natural or probable sequence, produced the injury complained of. It is a cause without which the injury would not have been sustained. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.

**3.** Restatement of Torts (Second) § 402A, Comment a states:

This Section states a special rule applicable to sellers of products. The rule is one of

contributory negligence as an affirmative defense. *Smith v. Smith*, 278 N.W.2d 155 (S.D.1979); 63 Am.Jur.2d Products Liability § 150 (1972). Thus, Instruction 20 is perhaps more applicable to strict liability than to negligence since it does not discharge the duty to adequately warn by the exercise of reasonable care to inform. Respondent Coleman also correctly notes that the defense of contributory negligence was not submitted to the jury.

■ By giving Instructions 20 and 25, the trial court apparently concluded there was competent evidence with respect to whether Coleman negligently failed to adequately warn and that a jury could find from the evidence that such failure was a proximate cause of the death. By denying Coleman's motion for a directed verdict, the court, in effect, decided that reasonable minds could differ on the conclusions to be drawn from the evidence on all issues, including strict liability. Cf. *Sweetman Construction Co. v. Dakota Pump, Inc.*, 88 S.D. 650, 226 N.W.2d 792 (1975).

■ Strict liability is unique because it relieves the plaintiff of the burden of proving negligence. *Engberg v. Ford Motor Co.*, supra. We concluded, however, in *Smith v. Smith*, supra, that the concept is not a negligence action with the elements of proof changed, but is a wholly new and different tort action which is substantive rather than procedural in nature.[4] While we can assume that the court's instructions on the duty to warn and proximate cause[5] as elements of negligence would also reach the issue of strict liability, we cannot agree that appellant was not prejudiced when the requested instruction was refused. Instruction 20 is expressly tied to negligence. Other instructions defined negligence and made

it an issue which the plaintiff had the burden to prove by a preponderance of the evidence against the defendant Coleman. The elements of strict liability to be proved as adapted to the facts in this case were not defined or expressed in the instructions. By refusing to instruct on strict liability, the court excluded a separate tort action which could have supported a recovery absent a finding of negligence. Considering the instructions as a whole, it is possible the jury concluded that plaintiff carried a burden of proof of which she was relieved under the strict liability doctrine. Consequently, the prejudicial effect of the refusal was not neutralized by the instructions which were given.

## II

■ Before the trial commenced and outside the hearing of the jury, appellant asked that all evidence "to the effect of the receipt of life insurance proceeds, health insurance proceeds, social security proceeds, or any other compensation, or any inheritance be excluded on the grounds that they have no probative value in this case." The defendants resisted the motion and it was denied by the court "for the present." The motion was renewed before any evidence was taken. The court ruled that "the motion is again, at least for the present, denied."

Following these rulings, plaintiff testified as part of her case that the decedent had two life insurance policies of which his parents were beneficiaries. Counsel for plaintiff states he introduced the evidence as a matter of "trial sense" rather than allow it to be brought out for the first time on cross-examination.

strict liability, making the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product. The Section is inserted in the Chapter dealing with the negligence liability of suppliers of chattels, for convenience of reference and comparison with other Sections dealing with negligence. The rule stated here is not exclusive, and

does not preclude liability based upon the alternative ground of negligence of the seller, where such negligence can be proved.

4. The trial court did not have the benefit of this decision when the present case was tried.

5. As to proximate cause in strict liability, see *Shaffer v. Honeywell, Inc.*, supra.

Defense counsel do not seem to argue seriously that proceeds from collateral sources are admissible evidence on damages.[6] We do not agree with appellant, however, that this development amounted to prejudicial error.

Other than resisting plaintiff's motion, there is no indication that any defendant intended to introduce evidence on the matters covered by the motion. Appellant was not cross-examined concerning the insurance policies and no effort was made by any defendant to introduce evidence on the subject. Defense counsel ignore the insurance policies in closing argument. It may have appeared to plaintiff's counsel to have been a prudent trial judgment for plaintiff to submit the evidence herself. It was, however, a calculated risk which was balanced against possible gain. A party cannot voluntarily introduce incompetent evidence and also rely on it as error in the event the verdict is adverse since by offering the evidence, a party waives any objection to its competency. *Goodale v. Murray*, 227 Iowa 843, 289 N.W. 450 (1940). See: 75 Am. Jur.2d Trial § 174 (1974). To hold otherwise would allow a litigant to fashion his own error.

Closely related to such waiver was plaintiff's failure to pursue a final and definite decision on the tentative ruling of the court. In *Bean v. Bickley*, 187 Iowa 689, 699, 174 N.W. 675, 680 (1919), the trial court's response to an objection by plaintiff was "[o]verruled for the present; I don't know what conversation is called for." The Supreme Court of Iowa held that "[t]his amounts to the reserving of a ruling, wherefore the assignment is in any event unavailable to appellant, because the matter was not thereafter called to the attention of the court." The rule is well-established that where the trial court temporarily sustains or overrules an objection to the introduction of evidence and no further ruling is requested or made, question concerning the competency of the evidence cannot be raised on appeal. *Clauson v. United States*, 60 F.2d 694 (8th Cir. 1932); *Rueger v. Hawks*, 150 Neb. 834, 36 N.W.2d 236, 246 (1949). See: Annot., 88 A.L.R.2d 83 (1963); 48 A.L.R. 487 (1927); 4 C.J.S. Appeal and Error § 322 (1957).

The judgment is affirmed with respect to the defendants Eileen and Don Coisman, doing business as The Ipswich Motel, and Ipswich Co-operative Association, and reversed with respect to the defendant Coleman Company, Inc.

DUNN, MORGAN and HENDERSON, JJ., concur.

WOLLMAN, C. J., concurs in part and dissents in part.

WOLLMAN, Chief Justice (concurring in part, dissenting in part).

I would affirm the judgment in its entirety.

The installation and operating instructions furnished with the wall furnace by Coleman clearly directed the installer to familiarize himself with local codes before installing the furnace and to follow carefully the instructions of the wall vent manufacturer. Coleman did not provide the venting system. Had Coleman's admonitions been followed, the accident would not have occurred.

I would hold that Coleman had adequately warned of the necessity of proper venting and that therefore the issue of its liability should not have been submitted to the jury on either theory.

---

6. For discussion on collateral benefits affecting damages for wrongful death, see Annot., 84 A.L.R.2d 764 (1962); Annot., 18 A.L.R. 678 (1922), supplemented in Annot., 95 A.L.R. 575 (1935).